**GET OUTDOORS II, LLC, Plaintiff,**

v.

**CITY OF SAN DIEGO and Does 1 through 25, inclusive, Defendants.**

**No. CIV.03–1436 WQH (AJB).**

United States District Court, S.D. California.

Aug. 8, 2005.

Adam Webb, Esq., Webb Law Group, Atlanta GA, Plaintiff's lead counsel.

Patrick Rick Lund, Esq., The Law Corporation of Patrick Lund, Newport Beach, CA, Plaintiff's local counsel.

Michael J. Aguirre, San Diego City Attorney, Mark Stiffler, Deputy City Attorney, Office of the City Attorney, Civil Division, San Diego, CA, Randal R. Morrison, Sabine and Morrison, San Diego, CA, Defendant's counsel.

## AMENDED ORDER

HAYES, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment, and Plaintiff's Motion for Partial Summary Judgment. After considering the arguments raised by the parties in their briefing and during oral argument, the Court now issues the following rulings.

## BACKGROUND

### A. *Factual Background*

Plaintiff Get Outdoors II, LLC (hereinafter "Get Outdoors") is a limited liability company organized under the laws of the State of Nevada, and qualified to do business in California. Get Outdoors has been issued the necessary licenses to operate outdoor advertising signs throughout the State. Defendant City of San Diego, California (hereinafter "City") is a political subdivision of the State of California.

Get Outdoors mostly operates outdoor advertising signs. Get Outdoors has signs throughout the nation. In the past, they have used their sign space to display messages of both commercial and noncommercial nature. In addition to leasing space to commercial advertisers, Get Outdoors has provided advertising space to noncommercial advertisers free of charge or at reduced rates.

Get Outdoors is currently "pursuing opportunities in the outdoor advertising industry in Southern California." To that end, Get Outdoors investigates possible sign locations, reviews municipal sign regulations and negotiates with landowners regarding the possibility of posting signs on their property. In an effort to break into the San Diego market, Get Outdoors negotiated with owners of various land parcels and arranged to lease space for the display of twenty four (24) signs. The parcels of land on which they hope to display signs are each located in heavily commercial and industrial areas and are adjacent to major roads or highways.

### B. The Denial Letter

On June 5, 2003, pursuant to the City's sign regulations, Get Outdoors submitted twenty three (23) completed applications for permits to post signs. By letter dated June 9, 2003, the authorized city official denied the applications. The letter stated:

RE: BILLBOARD SIGNS

Dear Mr. Benham,

On June 5, 2003, your representative submitted plans for 23 project sites for Billboard Signs which we call Advertising Display Signs. Unfortunately, as of July 19, 1983, the City of San Diego no longer allows new Advertising Display Signs.

In accordance with Land Development Code, section 142.1210, "Permanent... signs...shall contain on-premises...message only". Section 127.0301(attached) says Advertising Display Signs that were lawfully erected before July 19, 1983 are considered previously conforming advertising display signs.

Since we did not do any plan check, no fees were collected. You may pick up your plans and checks at Plan Pick Up area between 7:00 AM and 4:00 PM Monday thru Thursday, and Friday 7:00 AM–3:00 PM.

If you have any questions, please call me at 619–446–5244.

[SIGNED]

Felly Parel

Supervising Plan Review Specialist

### C. The Sign Ordinance

The Sign Ordinance is contained in San Diego Municipal Code ("SDMC") Chapters 11, 12 and 14. The Court will briefly summarize those provisions of the City's Sign Ordinance whose constitutionality Get Outdoors is challenging.

● The policy underlying the Sign Ordinance is "to provide a comprehensive system of regulations for signs that are visible from the public right-of-way. The intent ... is to provide a set of standards that are designed to optimize communication and quality of signs while protecting the public and the aesthetic character of the City." SDMC § 142.1201.

● The Ordinance prohibits all signs that do not display on-premises or public interest messages. SDMC § 142.1210(a)(1). "On-premises" messages identify or advertise an establishment, person, activity, goods, products or services located on the premises where the sign is installed. Id. "Public interest" messages are limited to official signs and notices, public utility signs, directional signs, holiday decorations, historical markers, commemorative

plaques, signs and notices relating to service clubs, religious and charitable organizations, political and ideological signs relating to election issues or candidates, and political and ideological signs unrelated to any election but expressing ideological or political views. *Id.*

• The content of any flags displayed is limited to a national identity or other political subdivisions, corporations or institutions. SDMC § 142.1255(k).

• Signs whose content is remotely or electronically changeable are limited to time, date, temperature or weather. SDMC § 142.1210(a).

• Signs adjacent or oriented to a freeway may only identify "the establishments where transient lodging or prepared food are offered to the public, or any retail ... business engaged in supplying goods and services essential to the normal mechanical operation of automobiles[.]" *Id.*

• Off-premises signs are permitted if they contain the following content: public utility and safety signs, directional and identification signs for subdivisions, public interest messages on behalf of charitable organizations, open house directional signs. SDMC §§ 142.1210, 142.1255.

• Signs located in single-family residential areas and open space areas may contain the following content: street address number, warnings (such as "no parking," "guard dog," etc.), real estate sale or rental information, yard sale information. SDMC § 142.1265(b).

• Signs located in multi-family residential areas may contain the following content: street address numbers, occupant names, warnings, directions, property identification, real estate sale or rental information, yard sale information. SDMC § 142.1270.

• Signs located in agricultural districts may contain the following content: identification of the establishment or primary use of the premises, information regarding sale of products produced on the premises if for sale to the public, and real estate sale or rental information. SDMC § 142.1275.

• Sign Permit/Process One [1]: in this permit application process, the permit may be approved or denied by a staff person without a public hearing. SDMC § 112.0502. The following signs require permits obtained through Process One: signs visible from the public right-of-way, other than public safety or utility signs, that exceed minimum specified dimensions; wall signs, roof signs, projecting signs, ground signs, revolving signs, and clocks or banners in the public right-of-way. *Id.* at Table 142–12A.

• Neighborhood Use Permit/Process Two: the permit may be initially approved, conditionally approved, or denied by a staff person without a public hearing. The applicant may request an appeal hearing after a decision is made. SDMC § 112.0503. The following signs require permits obtained through Process Two: signs with automatic chang-

1. The applications Get Outdoors submitted to the City for its billboards were Sign Permits submitted through Process One. "When an applicant seeks a permit for a new sign structure, the application is reviewed without regard to the proposed message content. The application form does not ask the applicant to disclose the proposed sign copy, and the City does not request such information. The only qualification to this routine is when the site plan, submitted with the permit application, indicates that the sign is likely to be used for off-premise commercial advertising—a billboard. When it appears that the proposed sign is likely to be used for off-premises commercial displays ... then the City inquires as to whether the proposed sign will be used for off-premise commercial advertising." *Def.'s Opp'n* to Mtn for Preliminary Injunction at 20 (citing *Didion Decl.* §§ 2–3).

ing copy and neighborhood identification signs. *Id.*

● The following signs do not require a permit: signs visible from the public right-of-way, other than public safety or utility signs, that do not exceed minimum specified dimensions; real estate signs, construction site signs, building identification nameplates, warning signs, window signs, bulletin boards for religious or charitable organizations, incidental signs, national flags and flags for political subdivisions, banners, pennants, streamers, and holiday decorations. *Id.*

● The following sign proposals "may" require a permit: secondary signs, signs in a single-unit or multi-unit residential area, signs in agricultural zones, and signs in open space zones. *Id.*

● The following signs are exempt in that sign permits are not required: changing the copy of an existing sign, interior signs, public utility and safety signs required by law, other signs required by law that do not exceed minimum dimensions, non-illuminated real estate or construction signs, nameplate and address signs under four square feet in area, accessory warning signs, window signs, bulletin boards for charitable and religious organizations, temporary onsite banners, streamers and pennants. *Id.*

● Advertising display signs containing offsite commercial messages are permitted if they were erected prior to July 19, 1983. SDMC § 127.0301.

● A sign permit is not required in order to change the copy on an existing sign. SDMC § 129.0803(a).

## D. The Plaintiff's Claims for Relief

On January 30, 2004, Plaintiff filed a Second Amended Complaint containing fourteen Claims for Relief. Many of the Claims contain similar or identical allegations. The Court will list each of the claims below.

1) The sign regulations' permit requirements lack necessary procedural safeguards because the regulation fails to constrain the time in which the city must reach a decision to grant or deny an applicants request. The city attempted to remedy the problem by setting forth a time restraint. However, the City passed an amendment requiring that the officials *wait* 45 days, as opposed to responding *within* 45 days.

2) The sign regulations grant city officials an impermissible level of discretion to approve or deny signs. Government officials are granted virtually limitless discretion in deciding whether permission will be granted or denied to post a sign, Government officials also retain discretion to circumvent or alter the applicability of the sign regulations without regard to any enunciated standards or guidelines. Such discretion in government licensing of First Amendment activities is unconstitutional.

3) The sign regulations unduly burden the ability of citizens and property owners to engage in protected First Amendment activity using fundamental means of communication. The City's sign restrictions place a tremendous burden on the ability of citizens and property holders in the City to communicate commercial or noncommercial messages using even the most fundamental methods of communication. Such onerous provisions leave virtually no avenue by which citizens can speak freely. These sections constitute an unreasonable, overboard, and unduly burdensome restriction of the freedom of citizens and property holders to speak.

4) The city's sign regulations are invalid as they favor commercial over noncommercial speech. These provisions grant priority to commercial messages to the detriment of the City's citizens who might choose to speak regarding any

other noncommercial message. The regulations placed upon citizens by these sections are a fundamental part of the Ordinance as a whole. These sections are obviously unconstitutional pursuant to the standard established by the United States Supreme Court over two decades ago.

5) The sign regulations impermissibly favor some noncommercial speech over other noncommercial speech. The City's sign restrictions are constitutionally invalid in that they regulate the content of noncommercial speech. The City chooses the topics it deems appropriate for public discourse. As such, these sections patently abridge the well-established constitutional rights of the citizens of the City and other would-be speakers. The regulations placed upon citizens by these sections are a fundamental part of the ordinances as a whole.

6) The sign regulations are constitutionally invalid because they restrict or prohibit far more speech than could ever be justified by any legitimate governmental objectives.

7) The City provides no evidence or findings which might justify its onerous restrictions on signs. The City's sign restrictions are constitutionally invalid because they permit government officials to regulate both commercial and noncommercial speech and yet fail to provide any rational findings to support such comprehensive regulations and prohibitions of constitutionally protected speech. The City cannot meet its burden of showing that each of its many regulations of speech will directly advance any substantial governmental interest in a material way.

8) The City's sign restrictions are constitutionally invalid in that they favor the commercial speech of certain businesses about certain commercial topics while prohibiting other legal and truthful commercial information. Government entities are not allowed to draw such distinctions.

9) The City's sign restrictions' favoritism of the speech of certain groups and organizations, while prohibiting speech by other entities that would be no more detrimental to any legitimate governmental interest, has denied Plaintiff and others equal protection under the law.

10) The sign regulations are unconstitutional as applied to Plaintiff. The City prohibits signs such as those sought by Plaintiff based upon several impermissible grounds. First, it prohibits them without complying with the Central Hudson analysis applicable to restrictions on commercial speech. Second, it does so based upon the content of the message to be posted on the sign. Third, it disfavors Plaintiff's requested signs when compared to purely commercial on-site signs. Fourth, it required Plaintiff to enter a permitting process that has insufficient safeguards to prevent government abuse of free speech rights. Fifth, the Sign Regulations impose criminal sanctions and forfeiture of property to enforce compliance with the unconstitutional restrictions. Sixth, the threat of penalties chilled the free speech rights of Plaintiff. Seventh, the Sign Ordinance favors certain businesses and organizations over Plaintiff without adequate justification for doing so. For these and other reasons, the sign Ordinance is unconstitutional as it was applied to Plaintiff.

11) The sign regulations are unconstitutional as applied to third parties under the overbreadth doctrine. The sign regulations are facially unconstitutional. The sign regulations are overbroad in the application and chill the free speech rights of individuals, businesses and organizations wishing to communicate commercial and noncommercial mes-

sages via the medium of signs within the City. The City's sign regulations are overbroad for several reasons. First, the regulations impermissibly prohibit and restrict noncommercial content without any compelling justification. Second, the sign regulations vest unbridled discretion in government officials to determine whether a sign may or may not be approved. Third, the sign regulations prohibit signs without complying with Central Hudson analysis applicable to restrictions on commercial speech. Fourth, they do so based upon the content of the message to be posted on the sign. Fifth, they require would-be applicants to enter a permitting process that has insufficient safeguards to prevent government abuse of free speech rights. Sixth, the sign Regulations impose criminal sanctions and forfeiture of property to enforce compliance with the unconstitutional restrictions. Seventh, the threat of penalties chills the free speech rights of other individuals, businesses, and organizations not before the Court. Eighth, the sign Regulations favor certain businesses and organizations over others without adequate justification for doing so. For these and other reasons, the sign regulations are unconstitutionally overbroad and facially invalid.

12) The sign regulations restrict or prohibit signs based upon content of the message displayed. Under the sign regulations, the size, height, number, location and type of sign permitted to be erected within the city depends upon the message conveyed. Such content based restrictions on protected speech must serve a compelling governmental interest to survive constitutional review. The City's interests in aesthetics and traffic safety are not compelling governmental interests. Because the sign regulations' content-based size, height, number, and location restrictions do not

serve compelling governmental interests, they are unconstitutional and must be invalidated.

13) The sign regulations's restriction on the size, height, number and location of signs are not narrowly tailored to directly advance the City's governmental interests in a material way. The City has provided no evidence or studies that demonstrate that these limitations restrict no more speech than is necessary to directly advance the City's stated interests. The sign regulations are not narrowly tailored to serve the City's legitimate government interests. Because the City has not met its burden that the sign regulations' arbitrary restrictions on size, height, number and location of signs within the City are no more restrictive of speech than necessary, the sign regulations must be invalidated.

14) Restrictions on protected speech must provide ample alternative methods of communicating the intended messages of potential speakers. The City's restrictions on size, height, number, locations and content on signs permitted in the City do not provide ample alternatives for residents, businesses, and organizations to communicate their intended messages.

Additionally, after each claim, Get Outdoors includes an argument reading: "Because these elements of the City's sign restrictions are constitutionally invalid and inseparable from the remainder of the regulations, this Court should declare the sign regulations invalid in their entirety." Plaintiff's Claims for Relief 1–14.

### E. Procedural Background

On July 21, 2003 Get Outdoors filed suit against the City of San Diego. Shortly thereafter, Get Outdoors filed a Motion for Preliminary Injunction and Defendant

filed a Motion to Strike Portions of Plaintiff's Amended Complaint. On December 30, 2003, the Court denied Get Outdoors' Motion for a Preliminary Injunction, and Denied in Part and Granted in Part the Defendant's Motion to Strike portions of the First Amended Complaint. On January 30, 2004, Get Outdoors filed a Second Amended Complaint. On August 31, 2004 Get Outdoors filed a Motion for Partial Summary Judgment. After a series of extensions were granted, the Defendant filed a Motion for Summary Judgment on October 22, 2004. On November 19, 2004, the Court heard oral arguments on both Motions. Since oral argument, both parties have filed several Motions for Leave to file Notices of Subsequent Authority. On each occasion, the Court has granted the parties leave to file the Notices of Subsequent Authority.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party may meet this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)) (internal quotations omitted).

In ruling on a motion for summary judgment, "[t]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.2001). Therefore, the court is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)). The court must view all inferences drawn from the

underlying facts in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. "Credibility determinations [and] the weighing of evidence ... are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

The Defendant argues that the Second Amended Complaint must be dismissed in its entirety because the Get Outdoors does not have standing to bring suit. Specifically, the Defendant argues that Get Outdoors cannot meet constitutional standing requirements because Get Outdoors has not suffered any actual injury, and because it is not likely that a favorable decision will redress Get Outdoors' injury. First, the Court will address whether Get Outdoors has standing to bring each of its claims in this matter.

■ Get Outdoors' claims implicate three types of constitutional challenges. First, Get Outdoors challenges the Ordinance on the basis that it could never be validly applied, because it impermissibly burdens noncommercial speech and imposes content-based restrictions on both commercial and noncommercial speech. When a plaintiff argues that the Ordinance could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity, the litigant only has standing to vindicate his own constitutional rights. *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir. 1998). Get Outdoors' claims arising under this theory will be discussed at length in section II of this Order.

Next, Get Outdoors challenges the Ordinance on the basis that it is overbroad, and therefore seeks to assert the rights of third parties through its overbreadth claim. These claims will be discussed in section I below. Last, Get Outdoors asserts separate claims regarding procedural safeguards and the City officials' level of discretion. These claims will be discussed in section III of this Order.

## I. Get Outdoors' Overbreadth Claims

Article III of the Constitution requires that there be a case or controversy before a federal court may decide a case. U.S. Const. art. III, § 2. One component of the case or controversy requirement is the doctrine of standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To prove standing under Article III, a plaintiff must show (1) injury in fact, (2) a causal connection between the injury and the conduct complained of and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. 2130. As a general rule, a party may assert only his or her own rights and cannot raise claims on behalf of parties not before the court. *See Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

■ Under certain circumstances, a party is permitted to prosecute claims on behalf of outside parties.

When a case concerns a challenge that a statute or ordinance is, on its face, unconstitutional, particularly in the First Amendment context, the type of facial challenge at issue affects the standing analysis. While a plaintiff must still demonstrate an injury in fact, a plaintiff may in some circumstances assert not just his own constitutional rights, but also the constitutional rights of others. *Horizon Outdoor, LLC v. City of Industry,* 228 F.Supp.2d 1113, 1123 (C.D.Cal.2002). As noted above, an ordinance may be facially unconstitutional in one of two ways: "[e]ither [ ] it is unconstitutional in every conceivable application, or [ ] it seeks to prohibit such a broad range of protected

conduct that it is unconstitutionally overbroad." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). "The second type of facial challenge is an exception to [the] general standing requirements: the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties, even if his own speech may be prohibited." *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998). A successful challenge to the facial constitutionality of a law invalidates the law itself. *Id.*

■ Applying the *Lujan* test, the Court finds that Get Outdoors does not have standing to assert its overbreadth facial challenge. Without commenting on whether Get Outdoors can show injury in fact, the Court will consider the second and third *Lujan* factors requiring a causal connection and redressability.

The Court finds that Get Outdoors cannot satisfy the second and third *Lujan* factors requiring the Plaintiff to show a causal connection between the injury and the conduct complained of and a likelihood that the injury will be redressed by a favorable decision. With respect to the causal connection factor, the City denied the permit applications because Get Outdoors sought to erect billboard advertising displays, which are prohibited under the Ordinance. The City submitted evidence to show that it denied the permits because it does not allow *new* advertising display signs. While Get Outdoors argues that the City denied the permits based on content-based restrictions, the Court is persuaded otherwise. The City issued a letter stating its reason for denying the applications and, as discussed below, the Court finds the proffered reason is constitutional. Thus, the Court finds that the Plaintiff cannot show a causal connection between the injury and the conduct complained of and thus, cannot show that the requisite causal nexus exists.

Additionally, the Court also finds that the third *Lujan* element undermines Get Outdoors' standing to bring this lawsuit. To satisfy the third element of the *Lujan* test, Get Outdoors would have to show a likelihood that the injury will be redressed by a favorable decision. However, the City has presented evidence to show that the permit applications do not comply with the size restrictions contained in the Ordinance. The Plaintiff argues that these "post hoc" justifications should be rejected, as they were not offered until some 16 months after the denial letter was issued.[2]

In support of its Motion for Summary Judgment, the Defendant submitted the Declaration of Mr. Didion, Assistant Deputy Director for the Land Development Review Division of the Development Services Department of the City of San Diego. In his Declaration, Mr. Didion sets forth the deficiencies in each of Plaintiff's 24 applications. Each of Plaintiff's applications failed to meet standards required by the San Diego Municipal Code and California Building Code. Additionally, the permit applications seek approval for ground signs that do not comply with the Ordinance's sign size restrictions. The plans for Get Outdoors' billboards are included with each permit application. Each proposed billboard is a "ground sign" within the meaning of the Ordinance, and their dimensions are as follows: fifty feet in height, with a sign face area of 672 square

---

**2.** The Plaintiff has failed to cite any law requiring the City to list in its denial letter *all* of the reasons why an application is deficient. Here, the City denied the permit applications because they were for new advertising display

signs, and submitted additional reasons why the permits do not comply in support of its standing arguments contained in its Motion for Summary Judgment.

feet. The billboards would all be located in commercial and/or industrial zones. Under the Ordinance, the sign face area for ground signs in such zones cannot exceed 300 square feet. The sign height in such zones cannot exceed fifty feet, and only freeway-oriented signs may be fifty feet tall. It is unclear which of Get Outdoors' proposed billboards, if any, are freeway-oriented. The addresses on the permit applications indicate that most of them would be located on surface streets. Further, the proposed billboards' sign face area exceeds the maximum allowed dimensions by over 300 square feet. Thus, Get Outdoors' sign permit applications would never be approved, regardless of the constitutionality of the Ordinance's sign copy regulations.

The Seventh Circuit found lack of standing on similar facts. *See Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois*, 9 F.3d 1290 (7th Cir.1993). Harp Advertising sought to erect billboards in Chicago Ridge, but could not obtain permits under portions of the village's zoning and sign ordinances. Harp filed suit against the village, challenging the ordinances on the basis that they violated the First Amendment. However, the Seventh Circuit held that because the billboards Harp sought to erect exceeded the maximum size allowed under the relevant municipal code, Harp lacked standing.

> [Harp] lacks standing to challenge either the sign code or the zoning code, because it could not put up its sign even if it achieved total victory in this litigation. Harp's proposed billboard would measure 20 by 60 feet. Yet village ordinance § 4–5–10–3(A) provides that no sign may have a face exceeding 200 square feet. Harp does not contest the validity of this ordinance; its proposed billboard, six times as large as Chicago Ridge allows, therefore will never appear. This litigation is irrelevant.

*Id.* at 1291 (internal citations omitted). Harp argued that because it was presenting a facial challenge to the ordinance, it did not need to show that a victory would redress its injury as required under *Lujan*. The court clarified the relationship between standing and facial challenges and concluded that Harp did not have standing to bring a facial challenge under the facts presented.

> Fear of penalty, leading to a reduction in speech, supports the doctrine that a person whose speech lawfully *could* be regulated may challenge a statute achieving regulation in an improper way, or to an excessive extent. This does not imply, however, that the requirement of standing to sue has been elided. When the challenged statute is the only thing standing in the way of additional speech, the winner of the contest has a valuable prize, even if the government may enact a different statute that snatches away the victory. Harp has no similar prospect of gain. An injunction against the portions of the sign that it has challenged would not let it erect the proposed sign; the village could block the sign simply by enforcing another, valid, ordinance already on the books.

*Id.* at 1292 (emphasis in original; internal citations omitted).

Here, the Plaintiff argues that the Court should not be persuaded by *Harp*, but instead should allow Plaintiff to challenge an entire Ordinance, without regard to whether Plaintiff was injured by a particular provision, or to whether the alleged harm can be redressed. However, the Court finds that under Plaintiff's theory, the exception to the standing requirements would swallow the constitutional rule. The Court therefore rejects Plaintiff's arguments and finds that Plaintiff cannot meet the Article III standing requirements because Plaintiff cannot meet its burden to

establish the redressability and a causal connection.

To satisfy the *Lujan* test, Get Outdoors must show that a decision in its favor would redress the injury by preventing the City from enforcing the Ordinance's sign copy regulations, thereby allowing Get Outdoors to secure permits. *See 4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111 (9th Cir.1999). Here, even if Get Outdoors were to prevail on each of its overbreadth claims, it nonetheless could not get its permit applications approved. Accordingly, the Court finds that Plaintiff lacks standing to bring its overbreadth challenges and that Summary Judgment in favor of Defendant is appropriate on those claims.

By way of reminder, the City denied Plaintiff's applications because they were for new advertising display signs. Thus, the Court will discuss the constitutionality of a ban on new advertising display signs below. However, because the Plaintiff cannot utilize the Overbreadth exception to the standing requirements as discussed above, the Court will grant Summary Judgment in favor of Defendant on the claims relying on the Overbreadth exception. Accordingly, the Court will list the claims that must be dismissed for lack of standing, below.

6) The sign regulations are constitutionally invalid because they restrict or prohibit far more speech than could ever be justified by any legitimate governmental objectives.

11) The sign regulations are unconstitutional as applied to third parties under the overbreadth doctrine. The sign regulations are facially unconstitutional. The Sign Regulations are overbroad in the application and chill the free speech rights of individuals, businesses and organizations wishing to communicate commercial and noncommercial messages via the medium of signs within the City. The City's Sign Regulations are overbroad for several reasons. First, the regulations impermissibly prohibit and restrict noncommercial content without any compelling justification. Second, the Sign Regulations vest unbridled discretion in government officials to determine whether a sign may or may not be approved. Third, the Sign Regulations prohibit signs without complying with Central Hudson analysis applicable to restrictions on commercial speech. Fourth, they do so based upon the content of the message to be posted on the sign. Fifth, they require would-be applicants to enter a permitting process that has insufficient safeguards to prevent government abuse of free speech rights. Sixth, the sign Regulations impose criminal sanctions and forfeiture of property to enforce compliance with the unconstitutional restrictions. Seventh, the threat of penalties chills the free speech rights of other individuals, businesses, and organizations not before the Court. Eighth, the Sign Regulations favor certain businesses and organizations over others without adequate justification for doing so. For these and other reasons, the Sign Regulations are unconstitutionally overbroad and facially invalid.

13) The Sign Regulations' restriction on the size, height, number and location of signs are not narrowly tailored to directly advance the City's Governmental interests in a material way. The City has provided no evidence or studies that demonstrate that these limitations restrict no more speech than is necessary to directly advance the City's stated interests. The Sign Regulations are not narrowly tailored to serve the City's legitimate government interests. Because the City has not met its burden that the Sign Regulations' arbitrary restrictions on size, height, number and location of

signs within the City are no more restrictive of speech than necessary, the Sign Regulations must be invalidated.

However, the inquiry does not end here. Because the Plaintiff does have standing to challenge the provision of the Ordinance that its applications were denied under, the Court will consider the validity of those claims in light of the pending Motions for Summary Judgment.

## II. Get Outdoors' Claims that the Ordinance Impermissibly Burdens Noncommercial Speech and Imposes Content-based Restrictions on Both Commercial and Noncommercial Speech.

When a plaintiff argues that the ordinance could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity, the litigant only has standing to vindicate his own constitutional rights. *See Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998); *See also Vincent* 466 U.S. at 796, 104 S.Ct. at 2124. Here, Get Outdoors argues that the sign Ordinance has a chilling effect on speech, severely limits or restricts speech, and violates the First Amendment rights of citizens in San Diego and beyond. Get Outdoors challenges the Ordinance on the basis that it could never be validly applied, because it impermissibly burdens noncommercial speech and imposes content-based restrictions on both commercial and noncommercial speech.

■ In *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court articulated a four-part test for determining the validity of governmental restrictions on commercial speech. "The First Amendment protects commercial speech only if (1) that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial government in-

terest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." *See Ackerley Communications v. Krochalis,* 108 F.3d 1095, 1097 fn. 3 (9th Cir.1997) citing *Metromedia* 453 U.S. at 507, 101 S.Ct. 2882 (summarizing *Central Hudson,* 447 U.S. at 563–66, 100 S.Ct. 2343.)

Billboard regulation is a distinct area of the law and has been referred to as "the law of billboards." *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 501, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). As noted by the Supreme Court, "[w]hile signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs—just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." *City of Ladue v. Gilleo,* 512 U.S. 43, 48, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) *citing Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). By way of background, the Court will set forth the law that serves as a backdrop for this litigation.

The leading case in the field of billboard regulation is *Metromedia v. City of San Diego.* In *Metromedia,* the Court considered the constitutionality of San Diego's sign Ordinance. Seven of the Justices agreed that San Diego's legislative judgment, that billboards contribute to traffic hazards and visual blight, sufficed to justify a complete ban on offsite commercial billboards. *See Ackerley Communications*

*v. Krochalis,* 108 F.3d 1095, 1099 fn. 5 (9th Cir.1997) *quoting Metromedia,* 453 U.S. at 510, 101 S.Ct. at 2893–94 (plurality), *id.* at 549–53, 101 S.Ct. at 2913–16 (Stevens, J., dissenting in part); *id.* at 560–61, 101 S.Ct. at 2919–20 (Burger, C.J., dissenting); *id.* at 570, 101 S.Ct. 2882. A summary of *Metromedia* follows.

In 1972, the City of San Diego enacted a new sign ordinance which prohibited all offsite commercial advertising displays and provided for the abatement of all such existing displays. Metromedia, a billboard advertising company, challenged the ordinance's constitutionality under the First Amendment. The California Supreme Court ruled that the entire ordinance was constitutional. *See Metromedia v. City of San Diego,* 23 Cal.3d 762, 154 Cal.Rptr. 212, 592 P.2d 728 (1979). The United States Supreme Court reversed in what remains a landmark decision in First Amendment jurisprudence in the context of commercial speech. *See Metromedia v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality).

In the plurality opinion, Justices White, Stewart, Marshall and Powell held that it was constitutionally permissible to ban offsite commercial messages even though onsite commercial messages were allowed. Justices Stevens, Burger and Rehnquist each wrote separate opinions validating the entire ordinance. However, the plurality also held that other provisions of the ordinance rendered it unconstitutional. First, because onsite commercial messages were permitted, the fact that onsite noncommercial messages were banned resulted in favoring commercial over noncommercial speech. Second, because the ordinance contained several exceptions to the ban, allowing certain types of noncommercial messages to be displayed both onsite and offsite, the ordinance unconstitutionally favored some noncommercial messages over others. Justices

Blackmun and Brennan filed a separate opinion in which they found the entire ordinance unconstitutional.

On remand, the California Supreme Court invalidated the entire ordinance, concluding that the provision banning offsite commercial messages was not severable from the provisions deemed unconstitutional. *See Metromedia v. City of San Diego,* 32 Cal.3d 180, 185 Cal.Rptr. 260, 649 P.2d 902 (1982). The City then amended the ordinance such that offsite commercial messages are still banned, but noncommercial messages are permitted both onsite and offsite. The City also added a substitution clause, under which owners of existing signs are permitted to change sign copy without having to obtain approval from the City. Finally, the present ordinance also includes a grandfather clause, which allows offsite commercial messages on signs erected prior to July 1983.

In at least four instances since *Metromedia,* the Ninth Circuit has expressly upheld the total ban on billboards announced in *Metromedia. See Ackerley Communications v. Krochalis,* 108 F.3d 1095 (9th Cir.1997); *Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 610 (9th Cir. 1993); *National Advertising Co. v. City of Orange,* 861 F.2d 246, 248 (9th Cir.1988); *Desert Outdoor Advertising v. Moreno Valley,* 103 F.3d 814 (9th Cir.1996). Additionally, the Supreme Court itself reaffirmed its holding in *Metromedia* in *Members of City Council of the City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 807, 104 S.Ct. 2118, 80 L.Ed.2d 772, (1984).

In short, the Plaintiff argues that *Metromedia* does not support a total ban on off-premises signs. However, the Court notes that the Ordinance here does not impose a *total* ban on billboards, but rather, bans *new* advertising display signs. The Ordinance also allows for billboards

built before a particular date, and allows on-site billboards.

■ Next, the Court will consider the Plaintiff's arguments that the on-site/off-site restriction is content-based, because it only allows particular messages depending on their location. Plaintiff's third, fourth and fifth claims read,

3) The sign regulations unduly burden the ability of citizens and property owners to engage in protected First Amendment activity using fundamental means of communication. The City's sign restrictions place a tremendous burden on the ability of citizens and property holders in the City to communicate commercial or noncommercial messages using even the most fundamental methods of communication. Such onerous provisions leave virtually no avenue by which citizens can speak freely. These sections constitute an unreasonable, overbroad, and unduly burdensome restriction of the freedom of citizens and property holders to speak.

4) The City's sign regulations are invalid as they favor commercial over noncommercial speech. These provisions grant priority to commercial messages to the detriment of the City's citizens who might choose to speak regarding any other noncommercial message. The regulations places upon citizens by these sections are a fundamental part of the ordinances as a whole. These sections are obviously unconstitutional pursuant to the standard established by the United States Supreme Court over two decades ago.

5) The sign regulations impermissibly favor some noncommercial speech over other noncommercial speech. The City's sign restrictions are constitutionally invalid in that they regulate the content of noncommercial speech. The City chooses the topics it deems appropriate for public discourse. As such,

these sections patently abridge the well-established constitutional rights of the citizens of the City and other would-be speakers. The regulations placed upon citizens by these sections are a fundamental part of the ordinances as a whole.

Plaintiff argues that the Ordinance provisions restrict more speech than necessary, and that the City is required to justify its ban on billboards. The Plaintiff also argues that the ban restricts too much speech, and leaves "virtually no avenue for communication."

In *Metromedia*, the Court stated: "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends." *Metromedia* at 508, 101 S.Ct. at 2892–93.

Additionally, several Ninth Circuit opinions rely on *Metromedia* to uphold both on-site/off-site distinctions and to affirm the constitutionality of a ban on billboards. *See Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 814 (9th Cir. 2003) *citing Outdoor Systems, Inc. v. City of Mesa,* 997 F.2d 604 (9th Cir.1993) (relying on *Metromedia* to uphold sign ordinances that distinguish between on-site and off-site signs when that distinction does not also prevent the erection of onsite noncommercial signs); *Ackerley Communs. of the Northwest v. Krochalis,* 108 F.3d 1095, 1099–1100 (9th Cir.1997) (holding that *Metromedia* continues to control the regulation of billboards and finding as a matter of law that Seattle's sign ordinance, enacted to further the city's interest in esthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation

will in fact advance the city's interests); *Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 610 (9th Cir.1993) (noting that *Metromedia* remains the leading decision in the field and upholding a restriction on offsite billboards); *National Advertising Co. v. City of Orange,* 861 F.2d 246, 248 (9th Cir.1988) (holding that city may prohibit commercial billboards entirely in the interests of traffic safety and aesthetics); cf. *Desert Outdoor Advertising v. Moreno Valley,* 103 F.3d 814 (9th Cir.1996) (relying on *Metromedia* but overturning summary judgment in favor of city that made no effort to show that it enacted its billboard ordinance to further any interest in aesthetics or safety).

Here, despite the clear law allowing a ban on billboards in these exact circumstances, the Plaintiff argues that the ban is unconstitutional. The Court rejects Plaintiff's arguments and finds that Summary Judgment in favor of Defendant is appropriate on Plaintiff's third, fourth and fifth claims.

■ Next, the Plaintiff argues that the City has not shown a legitimate state interest in regulating the billboards. However, the Court has already ruled on that issue. In its Order denying Plaintiff a Preliminary Injunction, the Court held that the City did not need to present evidence that the Ordinance furthers a legitimate state interest.[3] Regardless, Plaintiff reasserts many of the same arguments here.

Plaintiff's Seventh and Fourteenth Claims read:

7) The City's sign restrictions are constitutionally invalid because they permit government officials to regulate both commercial and noncommercial speech and yet fail to provide any rationale or findings to support such comprehensive regulations and prohibitions of constitutionally protected speech. The City cannot meet its burden of showing that each of its many regulations of speech will directly advance any substantial governmental interest in a material way.

14) Restrictions on protected speech must provide ample alternative methods of communicating the intended messages of potential speakers. The City's restrictions on size, height, number, locations and content on signs permitted in the City do not provide ample alternatives for residents, businesses, and organizations to communicate their intended messages.

The City argues that its stated policy of preventing construction of new billboards has already been authorized by the Supreme Court in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). In denying Plaintiffs' Motion for Preliminary Injunction, this Court considered the applicability of *Metromedia* and held that the City's total ban on new advertising display signs was constitutional under *Metromedia.* Additionally, as detailed below, the case law on point clearly allows the type of provision in question, and does not require the Defendant to come forward with evidence to show that the restrictions serve a legitimate interest. Rather, many courts have already found the City's stated interest to be legitimate, and the City need not present detailed proof that the billboard regulation will in fact advance the city's interests. *See Ackerley Communs. of the Northwest v. Krochalis,* 108 F.3d 1095, 1100 (9th Cir.1997) (holding that *Metromedia* continues to control the regulation of billboards and finding as a matter of law

3. As a matter of efficiency, the Court will refer to its prior rulings throughout this Order.

that Seattle's sign ordinance, enacted to further the city's interest in esthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation will in fact advance the city's interests).

The Court finds that Get Outdoors cannot prevail on its claims alleging unconstitutionality based on the City's failure to submit proof of a legitimate government interest. In *Metromedia*, the Supreme Court approved of the City's stated reason for a billboard ban, based on traffic safety and community aesthetics. The Court stated, "[n]or can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals." *Metromedia*, 453 U.S. at 507–08, 101 S.Ct. 2882. *Cf. Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 807, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) ("[t]he visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property constitutes a significant substantive evil within the City's power to prohibit."). The Court went on to hold that the City's regulation of commercial speech through its sign ordinance meets the constitutional requirements set forth in *Central Hudson*.

Nonetheless, Get Outdoors argues that the City is required to present evidence that justifies its regulation of speech through the sign ordinance. The Ninth Circuit recently addressed this precise issue, holding that a similar ordinance in Seattle, Washington, passed constitutional muster under *Central Hudson* even though Seattle did not present "detailed proof that the billboard regulation will in fact advance the city's interests." *Ackerley Communications of the Northwest, Inc. v. Krochalis*, 108 F.3d 1095, 1099–1100 (9th Cir.1997).

Get Outdoors disregards *Ackerley*, relying instead on several inapposite cases. In fact, Plaintiff does not address *Ackerley* in its Opposition, although *Ackerley* is Ninth Circuit law directly on point. In *Ackerley*, the Ninth Circuit held that "[a]s a matter of law Seattle's ordinance, enacted to further the city's interest in esthetics and safety, is a constitutional restriction on commercial speech *without detailed proof* that the billboard regulation will in fact advance the city's interests." *Ackerley*, 108 F.3d at 1099–1100 (emphasis supplied).

In addition, the Ninth Circuit has discussed how aesthetics and safety serve as legitimate reasons for sign regulations in other cases. For example, in *Desert Outdoor Advertising v. Moreno Valley*, the Ninth Circuit relied on *Metromedia* but found against a city that made no effort to show that it enacted its billboard ordinance to further any interest in aesthetics or safety. The Ninth Circuit held:

Insofar as billboards are concerned, the burden on the City of meeting the first prong of the Central Hudson test is not a great one. Had the City enacted the ordinance with a clear statement of purpose indicating the City's interest in eliminating the hazards posed by billboards to pedestrians and motorists and in preserving and improving its appearance, the City would have demonstrated that the ordinance sought to implement substantial governmental interests, and would thus have satisfied the first prong of the Central Hudson test.

*See Desert Outdoor Advertising v. Moreno Valley* 103 F.3d 814, 819 fn. 2 (9th Cir. 1996). Here, the purpose of the Ordinance, the concern for aesthetics and safety, is clearly stated in the Ordinance language. The applicable provision reads:

The policy underlying the sign Ordinance is "to provide a comprehensive system of regulations for signs that are

visible from the public right-of-way. The intent ... is to provide a set of standards that are designed to optimize communication and quality of signs while protecting the public and the aesthetic character of the City." SDMC § 142.1201.

Accordingly, the Court finds that the City is not required to present any additional evidentiary justification for its restriction on billboards. Thus, the Court finds that Summary Judgment in favor of Defendant is appropriate on Plaintiff's seventh and fourteenth claims.

■ Next, Plaintiff's eighth and ninth claims allege that the Ordinance is unconstitutional in that it favors certain speech, namely, commercial speech, and favors speech by certain groups without proof of a legitimate government interest for doing so. The claims read:

8) The City's sign restrictions are constitutionally invalid in that they favor the commercial speech of certain businesses about certain commercial topics which prohibit other legal and truthful commercial information. Government entities are not allowed to draw such distinctions.

9) The City's sign restrictions' favoritism of the speech of certain groups and organizations while prohibiting speech by other entities that would be no more detrimental to any legitimate governmental interest, has denied Plaintiff and others equal protection under the law.

Here, Plaintiff's claims fail for two main reasons. First, in *Clear Channel*, the Ninth Circuit clarified and reaffirmed what was decided by the Supreme Court in *Metromedia*, that off-site/on-site distinctions were not content-based restrictions. The *Clear Channel* court said,

"As the City correctly argues, there is nothing novel or constitutionally infirm about its use of the on-site/off-site distinction. The Supreme Court, the Ninth

Circuit, and many other courts have held that the on-site/off-site distinction is not an impermissible content-based regulation. In the leading Supreme Court case on the regulation of outdoor advertising, the plurality opinion found it permissible to distinguish between on-site and off-site commercial signs, while declaring a San Diego ordinance unconstitutional because of its general ban on noncommercial signs." *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 511–14, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). There is no support in *Metromedia* for the proposition that the on-site/off-site distinction *itself* places an impermissible content-based burden on noncommercial speech.

*Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles* 340 F.3d 810, 813–814 (9th Cir.2003). Thus, despite Plaintiff's repeated efforts to argue that the restrictions are unconstitutional, the Court finds that the on-site/off-site distinction is a permissible and constitutional regulation.

In the alternative, it also appears that Plaintiff's arguments regarding these claims are now moot. In January 2004, the City amended the sign code by adding the following provision:

The Owner of any sign which is otherwise allowed by this chapter may substitute noncommercial copy in lieu of any other commercial or noncommercial copy. This substitution of copy may be made without any additional approval or permitting. The purpose of this provision is to prevent any inadvertent favoring of commercial speech over noncommercial speech, or favoring of any particular noncommercial message over any other noncommercial message. This provision prevails over any more specific provision to the contrary.

Provisions such as the one above are commonly referred to as "message substitution clauses." The Plaintiff argues that the message substitution provision makes disfavored noncommercial speech dependant upon the existence of favored commercial or noncommercial messages. Plaintiff's argument is that the owners of the onsite premises would have to choose to place noncommercial copy on their premises. However, this does not constitute content-based regulation as Plaintiff contends. If the owner wants to display the message, the owner has that right. The City does not limit the speech, except for to only allow the owner of the premises to make the decision. The Plaintiff has not shown that noncommercial speech has been "chilled" by the provision. While the Plaintiff may speculate that an owner may not choose to display an onsite sign containing a noncommercial message, the Plaintiff has offered nothing more than mere speculation. However, as discussed below, mere speculative injury will not suffice.

In *Major Media of the Southeast v. City of Raleigh,* 792 F.2d 1269, 1273 (4th Cir. 1986) the Fourth Circuit said,

[The sign Company] predicts that the owners of the property on which "on premise" signs are placed will not allow placement of signs on their property or premises which contain noncommercial copy. Even if the contention should prove to be true, it derives from decisions of the individual property owners. It has nothing to do with the [City] Ordinance, itself, which by its very terms does not affect noncommercial signs. The owners of such premises are free to place or to refrain from placing

the noncommercial messages of others on their premises.

The Ninth Circuit adopted that ruling in *Outdoor Systems Inc. v. City of Mesa* 997 F.2d 604, 612 (9th Cir.1993), and again in *Clear Channel Outdoor v. City of Los Angeles,* 340 F.3d 810, 814 (9th Cir.2003).[4]

In *Outdoor Systems,* the Ninth Circuit stated,

These codes, by including substitution clauses, fit within the increasingly exacting parameters of our free speech jurisprudence. It is obvious that the first criterion of the Central Hudson test is met: the goals of the ordinance—esthetics and safety—represent substantial governmental interests. *See Vincent,* 466 U.S. at 806–07, 104 S.Ct. 2118 ("seven Justices [in Metromedia] explicitly concluded that [city's interest in avoiding visual clutter] was sufficient to justify a prohibition of billboards"); *National Advertising,* 861 F.2d at 248 ("The City may prohibit [commercial] billboards entirely in the interest of traffic safety and aesthetics."); see also Outdoor Systems, 819 P.2d at 49 ("We do not doubt that off-site billboards pose a significant threat to public safety and the general welfare.").

*Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 611 (9th Cir.1993).

Additionally, in *Clear Channel,* the Ninth Circuit found that "[u]nder *Outdoor Systems,* the key consideration is whether a sign ordinance is neutral with respect to noncommercial messages, and that neutrality is maintained by the substitution clause which allows noncommercial messages on either on-site or off-site signs." *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 814 (9th Cir.2003).

**4.** The Defendant also lists *Lombardo v. Warner,* 353 F.3d 774 (9th Cir.2003) in support of this argument. However, that opinion has been vacated, and rehearing *en banc* granted, by the Ninth Circuit, which has said that the case shall not be cited to, or by any Court in this Circuit.

Therefore, the Court finds that the restrictions in the Ordinance are not unconstitutional as the on-site/off-site distinction is not content-based. Furthermore, the "savings clause" further proves that the City does not intend to favor either commercial nor noncommercial speech. Thus, the Court finds that Summary Judgment in favor of Defendant is appropriate on Plaintiff's eighth and ninth claims.

## III. Plaintiff's Claims Regarding a Lack of Adequate Procedural Safeguards and Unbridled Discretion.

■ In addition, the Ninth Circuit has previously observed that "facial challenges under the First Amendment are permitted 'when the legislation allegedly vests government officials with unbridled discretion' and 'when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech.'" *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111 (9th Cir. 1999) *citing Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir.1998).

Additionally, the Supreme Court has held that in the First Amendment context, adequate procedural safeguards are necessary "to avoid undue delay result[ing] in the unconstitutional suppression of protected speech." *See City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) *citing FW/PBS v. City of Dallas*, 493 U.S. 215, 228, 110 S.Ct. 596, 107 L.Ed.2d 603. "The basis for the procedural safeguards... is the danger of 'undue delay' which 'compels the speaker's silence,' and 'results in the unconstitutional suppression of protected speech' as well as 'the principle that the freedoms of expression must be ringed about with adequate bulwarks.'" *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1114 (9th Cir.1999) *citing FW/ PBS*, 493 U.S. at 226, 228, 230, 110 S.Ct. 596. Thus, setting standing issues aside,

the Court will consider whether the Ordinance presents a danger of undue delay which compels the speaker's silence, and results in the unconstitutional suppression of protected speech.

Plaintiff's first claim for relief states,

1) The sign regulations' permit requirements lack necessary procedural safeguards because the regulation fails to constrain the time in which the city must reach a decision to grant or deny an applicants request. The city attempted to remedy the problem by setting forth a time restraint. However, the City passed an ordinance requiring that the officials *wait* 45 days, as opposed to responding *within* 45 days.

Before January of 2004, the Ordinance did not contain a timing provision. Plaintiff argues this renders the Ordinance unconstitutional. First, the Court notes that Plaintiff cannot show that it suffered any injury in fact as a result of this provision, or that there was any unreasonable delay involved it the application process.

Rather, the facts show just the opposite. Here, Get Outdoors was notified that its applications would be denied on the very same day they were submitted. In addition, the City issued a formal denial letter within seven days of Plaintiff's applications being submitted. Thus, Get Outdoors cannot show that it waited an extraordinary amount of time for its applications to be reviewed, nor that it suffered any delay or injury as a result of the timing provision in the Ordinance. The Court notes that the lack of injury in fact undermines Plaintiff's standing to bring this overbreadth claim. *See 4805 4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 (9th Cir.1999) (holding that according to the Supreme Court in *Munson*, 467 U.S. at 958, 104 S.Ct. 2839, the crucial issues in determining overbreadth standing "are whether [the plaintiff] satisfies the requirement of

'injury-in-fact,' and whether it can be expected satisfactorily to frame the issues in the case").

However, assuming arguendo that Plaintiff has standing to assert its claim, the Plaintiff has not submitted evidence to show that the lack of a timing provision renders the Ordinance unconstitutional. In *Outdoor Systems Inc. v. City of Mesa,* the Ninth Circuit considered a similar issue and found "[t]hat the codes lack a time limit for the processing of applications is not fatal. [Plaintiffs] have not cited one case, nor have we found any, which suggests that the failure to specify the time period for processing permit applications renders a statute or ordinance invalid." *Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 613 (9th Cir.1993).

Regardless, in January 2004, the City amended the sign code to add a time period provision for review of permit applications. However, instead of requiring that sign permit applications be reviewed *within* a 45 day time period, the amendment read that the applications should be reviewed in *no less than* a 45 day time period.

The Court acknowledges that an ordinance provision *prohibiting* review within the first 45 days may have presented a danger of undue delay. However, the Court finds that the issue is now moot. On Monday, February 14, 2005, the City passed an additional amendment correcting the drafting error in the January 2004 sign Ordinance amendments. The change took effect on March 16, 2005. Plaintiff argues that its claims survive despite the most recent amendment. For many reasons, the Court disagrees.

First, it is clear to the Court that the City attempted to pass an amendment that would pass constitutional muster, and that it inadvertently drafted a provision prohibiting review within 45 days. The City has submitted evidence to show that the City has been continuously and actively enforcing the provision as if it read correctly, that is, as if it imposed a 45 day *maximum* time constraint on permit applications. Additionally, as noted during oral argument, the legislative history indicates that the City was attempting to limit the time for review of applications, not enlarge the time.

Last, it appears the issue is now moot. As noted above, on Monday, February 14, 2005, the City passed an additional amendment correcting the drafting error in the January 2004 sign ordinance amendments. The change took effect on March 16, 2005. However, because the Plaintiff argues that the recent amendment does not render the issue moot, the Court will next turn to a discussion of the mootness doctrine.

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *See Clark v. City of Lakewood,* 259 F.3d 996 (9th Cir.2001). *See also Jacobus v. Alaska,* 338 F.3d 1095, 1102 (9th Cir.2003). It is well established that a party moving for dismissal on mootness grounds bears a heavy burden. *See, e.g., Coral Construction Co. v. King County,* 941 F.2d 910, 928 (9th Cir.1991) *citing Halet v. Wend Investment Co.,* 672 F.2d 1305, 1308 (9th Cir. 1982). Furthermore, in *Adarand Constructors, Inc. v. Slater,* the Supreme Court clarified that dismissal of a case on grounds of mootness would be justified only if it were "absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *See Jacobus v. Alaska,* 338 F.3d 1095, 1102–03 (9th Cir.2003) *citing Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 224, 145 L.Ed.2d 650, 120 S.Ct. 722 (2000).

In determining whether a case is moot, the Court must determine whether the alleged harm is likely to reoccur. Normally, voluntary cessation of allegedly illegal

conduct, standing alone, does not necessarily render a case moot. *See Id., citing e.g., City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Here, the Defendant has a heavy burden and must show that the amendments to the provisions make it so that it is "absolutely clear that allegedly wrong behavior could not reasonably expect to recur." *Friends of the Earth v. Laidlaw Environmental Services* 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

In terms of offending legislation, "one factor to consider in deciding if a case is moot as a result of subsequent statutory amendments is whether the governmental entity is likely to reenact the offending provision." *Coral Constr. Co. v. King County,* 941 F.2d 910, 928 (9th Cir.1991) *citing Barilla v. Ervin,* 886 F.2d 1514, 1521 (9th Cir.1989).

The Plaintiff argues that the statutory amendments cannot render this case moot in as much as the legislature may later decide to repeal them. In support of this proposition, they cite *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 288–89, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), in which the Court held that a void-for-vagueness challenge to a city ordinance had not been mooted by the repeal of the offending language.

*Mesquite* is easily distinguished from this case. In *Mesquite,* the city had expressly announced its intention to reenact the offending language if the case was dismissed as moot. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. at 289 n. 11, 102 S.Ct. 1070.

Furthermore, in *Barilla v. Ervin* the Ninth Circuit held that the amendment of an offending law mooted the case absent any "indication whatsoever" that the legislature intended to repeal the amendments. *Barilla v. Ervin,* 886 F.2d 1514, 1521 (9th Cir.1989) *citing Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

Here, the Court finds that there is no indication that the City intends to repeal the amended provision in question. As noted above, the City has been operating as if the provision placed a time *limit* upon the City. Given (1) the initial efforts of the City to add a provision containing a time limit, (2) the City's effort to then amend the provision so that it correctly imposed a time limitation for review, and (3) the fact that the City has been operating as if a time limitation existed all along, the Court finds that the Defendant has met its heavy burden. The Defendant has shown that the governmental entity is unlikely to reenact the offending provision, and that therefore, it is clear that the allegedly wrong behavior is unlikely to recur. Thus, the Court finds that Summary Judgment in favor of Defendant is appropriate on Plaintiff's first claim.

■ Next, the Court will consider the Plaintiff's claim that the Ordinance is unconstitutional because it grants City officials an impermissible level of discretion. The Court finds that this claim warrants only minimal attention in light of the Court's rulings above. Plaintiff's second claim for relief reads,

2) The sign regulations grant city officials an impermissible level of discretion to approve or deny signs. Government officials are granted virtually limitless discretion in deciding whether permission will be granted or denied to post a sign. Government officials also retain discretion to circumvent or alter the applicability of the sign regulations without regard to any enunciated standards or guidelines. Such discretion in government licensing of First Amendment Activities is unconstitutional.

First, the Court finds that the Plaintiff has not shown that an impermissible level

of discretion has been vested in government officials here. While Plaintiff alleges that the officials have unbridled discretion, the City's proffered reason for denying the application permits was constitutional, as noted above. Additionally, a broad allegation will not suffice here as the officials are bound by judicial precedent in determining what constitutes commercial speech.

"[S]ufficient guidance in categorizing speech as commercial or noncommercial is provided by various decisions of the Supreme Court. *Major Media*, 792 F.2d at 1272 (*citing Central Hudson*, 447 U.S. at 561, 100 S.Ct. 2343); *see also Discovery Network*, 113 S.Ct. at 1513 (discussing definitions of commercial speech). If the Supreme Court's definitions of commercial and noncommercial speech do not constitute "narrow, objective, and definite standards," *Shuttlesworth*, 394 U.S. at 150–51, 89 S.Ct. 935, it is hard to imagine what would. The codes thus do not vest an impermissible amount of discretion in the city officials by allowing them to determine whether signs contain commercial or noncommercial messages.

*Outdoor Systems v. Mesa*, 997 F.2d 604, 613 (9th Cir.1993).

Accordingly, the Court finds that the City denied Get Outdoors' applications because they were for new advertising display signs. There is no proof that the officials denying the applications used discretion. Rather, as indicated in the denial letter, the City denied *all* applications for advertising display signs as they are not allowed in San Diego. The Plaintiff has failed to show how the Ordinance is unconstitutional because it grants unbridled discretion, and thus, the Court will enter Summary Judgment in favor of Defendant on Plaintiff's second claim.

## IV. Plaintiff's Claims and Severability

■ Next, after each claim, Get Outdoors includes an argument reading: "[b]ecause these elements of the City's sign restrictions are constitutionally invalid and inseparable from the remainder of the regulations, this Court should declare the sign regulations invalid in their entirety." Plaintiff's Claims for Relief 1–14. As discussed above, the Court has found that the portions of the Ordinance that Plaintiff has standing to challenge are constitutional.

Whether one portion of an ordinance is severable from another is a question of state law. *See Valley Outdoor, Inc. v. County of Riverside*, 337 F.3d 1111, 1114 (9th Cir.2003) (finding unconstitutional grandfather clause severable from legal, content-neutral zoning, size and height provisions); *see also Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). There are three criteria for severability under California law: the provision must be grammatically, functionally, and volitionally severable. *Calfarm Ins. Co. v. Deukmejian*, 48 Cal.3d 805, 821, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989).

The final determination depends on whether the remainder ... is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute ... or constitutes a completely operative expression of the legislative intent ... and is not so connected with the rest of the statute as to be inseparable.

*Id.* The Court finds that the challenged provisions could be severed from the provisions that Get Outdoors challenges. Get Outdoors' claims primarily focus on SDMC § 142.1210, the general sign regulations. This section has two subsections: copy regulations and locational regulations. Sections 142.1225, 142.1230, 142.1235 and 142.1240 set forth the sign location and sign size regulations for primary signs in commercial and industrial zones.

Section 142.1240 is the provision under which Get Outdoors' proposed billboards

would be prohibited because of their size. These sections do not purport to regulate copy, and they represent content-neutral time, place and manner restrictions of the kind upheld in other commercial speech cases. *See Valley Outdoor,* 337 F.3d at 1115. These sections therefore may function independently of the sections in the Ordinance that regulate sign copy or that regulate signs posted in residential or agricultural areas. In sum, valid provisions of the Ordinance would bar Get Outdoors from erecting its signs, because the signs are far too large to comply with these provisions. In other words, Get Outdoors' permits would not get approved even if it prevailed in this lawsuit.

## V. Get Outdoors' Remaining Claims

Last, the Court finds that Plaintiff's tenth and twelfth claims for relief are merely duplicative of other claims in Plaintiff's Complaint. Consequently, arguments relating to each of these claims have already been addressed by the Court in other portions of this Order. For example, Plaintiff's tenth and twelfth claims challenge the Ordinance based on inadequate "procedural safeguards" and because the Ordinance "favors certain businesses and organizations over Plaintiff without adequate justification for doing so." Furthermore, Plaintiff again argues that the "City's interests in aesthetics and traffic safety are not compelling governmental interests," and states that "[f]or these and other reasons, the sign Ordinance was unconstitutional as it was applied to Plaintiff." The Court, having discussed each of the allegations in claims ten and twelve above, need not reiterate its findings here. Accordingly, Plaintiff's tenth and twelfth claims for relief, listed below, must fail.

10) The sign regulations are unconstitutional as applied to Plaintiff. The City prohibits signs such as those sought by Plaintiff based upon several impermissible grounds. First, it prohibits them without complying with the *Central Hudson* analysis applicable to restrictions on commercial speech. Second, it does so based upon the content of the message to be posted on the sign. Third, it disfavors Plaintiff's requested signs when compared to purely commercial on-site signs. Fourth, it required Plaintiff to enter a permitting process that has insufficient safeguards to prevent government abuse of free speech rights. Fifth, the sign Regulations impose criminal sanctions and forfeiture of property to enforce compliance with the unconstitutional restrictions. Sixth, the threat of penalties chilled the free speech rights of Plaintiff. Seventh, the sign Ordinance favors certain businesses and organizations over Plaintiff without adequate justification for doing so. For these and other reasons, the sign Ordinance is unconstitutional as it was applied to Plaintiff.

12) The sign regulations restrict or prohibit signs based upon content of the message displayed. Under the sign regulations, the size, height, number, location and type of sign permitted to be erected within the city depends upon the message conveyed. Such content-based restrictions on protected speech must serve a compelling governmental interest to survive constitutional review. The City's interests in aesthetics and traffic safety are not compelling governmental interests. Because the sign Regulations' content-based size, height, number, and location restrictions do not serve compelling governmental interests, they are unconstitutional and must be invalidated.

## CONCLUSION

In conclusion, the Court finds that Summary Judgment in favor of Defendant is appropriate on all claims. Summary Judg-

ment in favor of Defendant is appropriate on Get Outdoors' Overbreadth claims because Get Outdoors can neither show a causal connection nor redressability as required. Additionally, the Plaintiff has failed to show that there is any genuine material issue regarding the constitutionality of the Ordinance. As discussed at length above, the Supreme Court has affirmed the constitutionality of a total ban on new offsite commercial billboards. Since then, at least four Ninth Circuit opinions have expressly affirmed and adopted the findings of that case, and the Supreme Court has since reaffirmed its decision.

Here, each of the Plaintiff's claims fail. Accordingly, the Court will enter Summary Judgment in favor of Defendant on all claims. Additionally, the Court will deny Plaintiff's Motion for Partial Summary Judgment as moot, as each of the issues raised in Plaintiff's Motion are discussed within this Order.

Accordingly,

**IT IS ORDERED** Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

### ORDER

On July 13, 2005, the Court issued an Order granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment in this matter. In an effort to correct clerical errors inadvertently contained in that Order, the Court now issues an Amended Order, attached.

**IT IS SO ORDERED.**