**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OUTDOOR MEDIA GROUP, INC., a
California Corporation,
            *Plaintiff-Appellant,*

            v.

CITY OF BEAUMONT, a California
Charter City,
            *Defendant-Appellee.*

No. 05-56620

D.C. No.
CV-03-01461-RT

OPINION

Appeal from the United States District Court
for the Central District of California
Robert J. Timlin, Senior Judge, Presiding

Argued and Submitted
June 6, 2007—Pasadena, California

Filed November 1, 2007

Before: Cynthia Holcomb Hall and Consuelo M. Callahan,
Circuit Judges, and Lyle E. Strom,* District Judge.

Opinion by Judge Hall;
Partial Concurrence and Partial Dissent by Judge Callahan

---

*The Honorable Lyle E. Strom, Senior United States District Judge for the District of Nebraska, sitting by designation.

**COUNSEL**

Jeffrey A. Tidus and Henry H. Gonzalez, Baute & Tidus, Los Angeles, California, for the appellant.

Randal R. Morrison, Sabine and Morrison, San Diego, California, for the appellee.

**OPINION**

HALL, Senior Circuit Judge:

Outdoor Media Group appeals the district court's dismissal of its 42 U.S.C. § 1983 complaint under Federal Rule of Civil Procedure 12(b)(6). Outdoor Media asserts that the City of Beaumont's billboard ordinance violates the First and Fourteenth Amendments. Beaumont repealed the challenged ordinance and replaced it with a new ordinance that specifically bans new billboard construction. The district court then dismissed Outdoor Media's claims for injunctive and declarative relief as moot, and dismissed its damages claim on the merits. The district court had jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction over the appeal under 28 U.S.C. § 1291. We reverse in part and remand for consideration of whether the old ordinance created an unconstitutional preference for commercial over noncommercial speech or imper-

missibly distinguished among categories of noncommercial speech, and whether this alleged infirmity gives rise to Outdoor Media's damages claim.

## I.  Background

On May 22, 2003, Outdoor Media filed a conditional use permit application with the Planning Commission of the city of Beaumont to erect four billboards at the junction of Interstate 10 and State Route 60. On July 8, the City's Director of Planning recommended that the Planning Commission deny the application, because the signs "would result in excessive, undue and adverse visual intrusion in the character of the subject Interstate 10 and State Highway 60 commercial corridors, by adding unrelated advertising to a future new commercial facility." It also found the proposed billboards would "have a detrimental effect on the general public, health, safety and welfare by adversely affecting existing views of open space and visual relief and future views of new commercial development." The Planning Commission accepted this recommendation and rejected Outdoor Media's permit application. Outdoor Media appealed to the City Council, which affirmed the denial.

Outdoor Media filed this suit on December 12, 2003, alleging that the city deprived it of its First and Fourteenth Amendment rights. Specifically, Outdoor Media alleges that (1) the ordinance violates the First Amendment because it regulates signs on the basis of content, regulates commercial speech without a substantial government interest, allows the city standardless discretion in the permitting process, and is overbroad; (2) the city violated Outdoor Media's procedural due process rights because its denial was unreasonable, arbitrary, and capricious; and (3) the ordinance violates the Equal Protection Clause by regulating on the basis of arbitrary and unreasonable classifications. Outdoor Media sought damages for deprivation of its constitutional rights, a declaration that the sign ordinance is unconstitutional on its face and as

applied to Outdoor Media, and injunctive relief prohibiting the city from interfering with Outdoor Media's efforts to erect otherwise-conforming signs within the city.

On February 3, 2004, the City Council repealed the challenged sign ordinance and replaced it with a new ordinance that specifically bans new billboards. The city sought judicial notice of the old and new sign ordinances, and filed a motion to dismiss the complaint. Outdoor Media opposed the motion to dismiss and sought judicial notice of the Director of Planning's recommendation to reject the company's permits. On June 30, 2005, the district court granted both motions for judicial notice and the motion to dismiss. Outdoor Media timely appealed.

## II.   Standard of Review

We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). When ruling on a motion to dismiss, we may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). We accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Knievel*, 393 F.3d at 1072.

## III.   Analysis

### A.   Jurisdiction

Before we examine the merits of Outdoor Media's appeal, we must address Beaumont's claim, raised for the first time at oral argument, that we lack jurisdiction to consider this case because Outdoor Media has failed to exhaust its state law remedies. Generally, the federal courts deem waived any arguments that are not raised and presented in the parties'

opening briefs. *See, e.g., Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 459 n.6 (9th Cir. 2007). By failing to present the issue properly, Beaumont has deprived its opponent of a fair opportunity to respond comprehensively to its claim, and has deprived this court of the benefit of a robust debate informed by zealous advocacy. However, the waiver rule does not apply when the issue goes to the district court's jurisdiction. *See Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992). Therefore, we address Beaumont's belated argument.

**[1]** Beaumont's jurisdictional argument flows from two premises: (1) a plaintiff must exhaust its state law remedies before pursuing a federal claim, and (2) a writ of administrative mandamus is the exclusive state law remedy for an allegedly improperly denied conditional use permit. We need not address the second premise because the first is fatally flawed. The Supreme Court has explained that "exhaustion of state administrative remedies is not a prerequisite to an action under § 1983." *Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982); *see also Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997) ("Congress imposed only a limited exhaustion requirement on actions brought under 42 U.S.C. § 1983, as this case was. The statute requires exhaustion only when brought by prisoners. Thus, mandating exhaustion in this case would not be consistent with congressional intent."). Beaumont's reliance upon our Fifth Amendment regulatory takings cases is misplaced. We require exhaustion of administrative remedies in the takings context as a matter of ripeness: Because the Takings Clause only prohibits the taking of property without just compensation, a takings claim is not ripe until the claimant has pursued and been denied just compensation under the applicable state compensatory procedures. Here, the alleged deprivation of Outdoor Media's constitutional rights was completed when Beaumont denied its permit applications. Because exhaustion is not required to pursue a Section 1983 complaint, we find that Outdoor Media's failure to seek a writ of administrative man-

damus did not deprive the district court of jurisdiction over this case.

### B.    Mootness of Claims for Declaratory and Injunctive Relief

[2] Outdoor Media asserts that the district court erred in finding that the repeal of the ordinance mooted its requests for a declaration that the ordinance is unconstitutional and for an injunction prohibiting its enforcement. "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The basic question is whether there exists a present controversy as to which effective relief can be granted." *Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993) (internal quotation marks and citations omitted). "Generally, a case should not be considered moot if the defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). "A statutory change, however, is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Id.*[1]

[3] Here, the district court correctly determined that the city's repeal of the sign ordinance moots Outdoor Media's claims for declaratory and injunctive relief. Because there is no longer any risk that Outdoor Media will be subject to the challenged ordinance, there exists no live issue upon which the court could issue prospective relief. *Noatak*, 38 F.3d at 1510. Outdoor Media attempts to distinguish *Noatak* on the ground that Beaumont repealed the statute only after Outdoor Media filed suit, suggesting that the repeal is strategic and that the city will re-enact the statute upon resolution of the case. The company relies upon *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982), but as the district court rec-

---

[1]*See also id.* ("As a general rule, if a challenged law is repealed or expires, the case becomes moot.").

ognized, Outdoor Media's broad reading of that case does not square with this circuit's precedent. *Noatak* limited *Mesquite* to the "rare" situation "where it is *virtually certain* that the repealed law would be reenacted." *Noatak*, 38 F.3d at 1510 (emphasis added); *see also Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996).**²** The fact that the lawsuit may have prompted the city's action does not alone show the city's intent to later re-enact the challenged ordinance. *Cf. Smith v. University of Washington Law School*, 233 F.3d 1188, 1194 (9th Cir. 2000) (defendant has given no indication of intention to reinstate policy invalidated while case was pending and "we will not assume that it will. We also will not assume bad faith").**³** The new ordinance, forbidding all billboards, accomplishes the city's stated goals of limiting visual clutter and preserving commercial viability of future developments, meaning the city has no motive to re-enact a constitutionally suspect ordinance to accomplish the same objective.

**[4]** Outdoor Media also claims that its claim is not moot because the new ordinance remains constitutionally infirm. In *Northeastern Florida Chapter of the Associated General Contractors of America v. Jacksonville*, 508 U.S. 656 (1993), the Supreme Court explained that amendments to a challenged statute did not moot a case because the new ordinance "disadvantaged [plaintiffs] in the same fundamental way" as the challenged statute. *Id.* at 662. We find *Northeastern Florida* to be inapposite because the new ordinance cures the constitu-

---

**²**See also Tanner Adver. Group, L.L.C. v. Fayette County, Ga., 451 F.3d 777, 785 (11th Cir. 2006) ("Ordinarily, a challenge to the constitutionality of a statute is mooted by repeal of the statute.") (citation omitted); *Federation of Adver. Ind. Rep. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (same); *cf. Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1181 (9th Cir. 2006) (dismissing claim as moot where new ordinance grants plaintiff relief and record does not indicate that city will repeal ordinance upon conclusion of case).

**³**We also note that it would be an odd incentive structure that punishes a city for repealing an ordinance in response to a litigant's suggestion that said ordinance was illegal.

tional deficiencies that Outdoor Media alleged in connection with the original sign ordinance. The crux of Outdoor Media's complaint is that the old ordinance (1) grants standardless discretion to planning commissioners, (2) regulates more commercial speech than necessary to advance a substantial governmental interest and (3) impermissibly burdens non-commercial speech greater than commercial speech and favors some non-commercial messages over others. The new ordinance completely bans all new off-site commercial signs. Because the planning commission need only determine whether the proposed sign is an off-site commercial sign, the new ordinance does not grant that body unbridled discretion. *See Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 613 (9th Cir. 1993). The new ordinance justifies its ban on off-site commercial signs by citing the aesthetic harm imposed by billboards. The Supreme Court and our prior case law have endorsed this rationale as a substantial government interest, and found that a complete ban on new billboards is no more extensive than necessary to serve that interest under prior case law. *See Metromedia,* 453 U.S. at 511-12; *Ackerley Commc'ns Inc. v. Krochalis*, 108 F.3d 1095, 1097-1100 (9th Cir. 1997). Finally, the new ordinance contains a message substitution clause that permits the substitution of noncommercial content for existing copy on any otherwise permissible sign. This clause cures any potentially impermissible burdens on noncommercial speech caused by the off-site sign ban. *See Outdoor Sys.*, 997 F.2d at 611.[4] Because the new ordinance is not "sufficiently similar to the repealed ordinance

---

[4]Outdoor Media also argues that the new ordinance is overly broad, but the breadth of the new ordinance's prohibition is not challenged in its complaint and in any case, Outdoor Media does not explain how the ban on new commercial billboards will "have any different impact on any third parties' interests in free speech than it has" on itself. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508-09 (1981) (plurality opinion) (upholding identical ban against facial challenge); *Taxpayers for Vincent,* 466 U.S. at 806-07 (endorsing *Metromedia*'s holding).

that it is permissible to say that the challenged conduct continues," *Northeastern Florida*, 508 U.S. at 662 n.3, Outdoor Media's claims for declaratory and injunctive relief are moot.[5]

## C.   Damages

As the district court correctly noted, the repeal of the ordinance under which Outdoor Media's permits were denied does not moot its claim for damages. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09 (2001); *see also Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002). A plaintiff seeks damages for a past violation of its rights; this violation is not mooted by a promise not to repeat the alleged conduct in the future. The district court found that Outdoor Media was not entitled to damages because it had no vested rights upon which the city infringed. On appeal, Outdoor Media argues that vested rights are not required to claim damages and that it had a vested right based upon the city's bad faith denial of its permit application.

[5] The district court's ruling was correct as to Outdoor Media's procedural due process claim. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). The parties agree that property interests giving rise to a due process claim, such as vested rights in a land development permit, "are created and their dimensions are defined by existing rules or understandings that stem from . . . state law." *Id.* at 577; *see also Lakeview Dev. v. City of South*

---

[5]Outdoor Media also argues that the statute's repeal does not moot its claims because, unlike in *Noatak* and *Federation of Advertising Industry Executives v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003), the repeal does not provide the company the "full relief" of allowing its billboards to be built. Outdoor Media cites no law directly supporting this argument and we find it unpersuasive.

*Lake Tahoe*, 915 F.2d 1290, 1294 (9th Cir. 1990). California has recognized a protected property interest in billboard construction only "[o]nce a permit has been issued." *Traverso v. People ex rel. Dep't of Transp.*, 6 Cal. 4th 1152, 1162 (1993); *see also West Coast Advertising Co. v. City and County of San Francisco*, 256 Cal. App. 2d 357, 359 (1967). Outdoor Media argues that because the city allegedly wrongfully denied it an opportunity to rely upon an issued permit, its rights should be considered vested, relying upon the district court opinion in *Horizon Outdoor LLC v. City of Industry*, 228 F. Supp. 2d 1113, 1121 (C.D. Cal. 2002). This case is unpersuasive, as it relies entirely upon Eleventh Circuit cases interpreting Florida law. Because this case is at odds with California state court precedent, we decline to follow it here. Therefore we find that the district court correctly determined that Outdoor Media lacked a vested property right in its unapproved billboard permit application, and therefore its procedural due process claim was properly dismissed.

**[6]** The district court erred, however, in dismissing Outdoor Media's First Amendment and Equal Protection claims on this ground. The establishment of a vested property right is irrelevant to such a challenge. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990) (rejecting argument that employee's First Amendment rights were not infringed by politically motivated promotion decisions because employee had no legal entitlement to promotion). *Rutan* reaffirmed that

> even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests-especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those

> freedoms would in effect be penalized and inhibited.
> This would allow the government to produce a result
> which it could not command directly. Such interfer-
> ence with constitutional rights is impermissible.

*Id.* (internal quotation marks and citations omitted). We there-
fore hold that the district court erred in dismissing Outdoor
Media's First Amendment and Equal Protection claims solely
due to lack of a vested property right, and examine whether
any of these theories state a claim upon which relief may be
granted.

### 1.  *First Amendment: Unbridled Discretion*

[7] The prior restraint doctrine requires that a licensing
regime "avoid placing unbridled discretion in the hands of
government officials." *GK Ltd. Travel v. City of Lake
Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006). This require-
ment seeks to "alleviate the threat of content-based, discrimi-
natory enforcement that arises where the licensing official
enjoys unduly broad discretion in determining whether to
grant or deny a permit." *Id.* (internal quotation marks omit-
ted). To avoid impermissible discretion, an ordinance must
"contain adequate standards to guide the official's decision
and render it subject to judicial review." *Thomas v. Chicago
Park Dist.*, 534 U.S. 316, 323 (2002).

Under the old ordinance, a permit was required for any sign
that was not expressly exempted from the permit scheme. For-
mer City of Beaumont Municipal Code (hereafter "Old Ordi-
nance") § 17.60.020(A).**⁶** The Director of Planning was
required to rule upon any permit application within fifteen
days, and was specifically instructed that his review was to
"ensure that any sign proposal is in conformance with this

---

**⁶**The Old Ordinance contained a list of exempted signs, none of which
are implicated by Outdoor Media's permit applications. *See* Old Ordi-
nance § 17.60.025(A).

Chapter and is consistent with its intent and purpose." *Id.* § 17.60.020(D). The city's delineated intent and purpose includes encouraging "a desirable urban character which has a minimum of overhead clutter," enhancing the "economic value of the community and each area thereof through the regulation of the size, number, location, design and illumination of signs," and encouraging "signs which are compatible with on-site and adjacent land uses." *Id.* § 17.60.005.

**[8]** Notably, the Old Ordinance explicitly prohibited all "Off-site signs, except temporary subdivision directional signs as provided for in this Chapter." *Id.* § 17.60.025(B). "Off-site signs" were defined as "[a]ny sign which advertises or informs in any manner businesses, services, goods, persons or events at some location other than that upon which the sign is located." *Id.* § 17.60.010(M). Regulations governing the Commercial-Freeway Service zone, where Outdoor Media sought to erect its signs, were even more specific: the planning commission could grant permits for freeway-facing signs only if the signs are "located upon or within five hundred (500) feet of the property upon which the use identified is located" and "in the vicinity of a freeway interchange and within three hundred (300) feet of the freeway right-of-way and six hundred (600) feet of the intersecting street right-of-way." *Id.* § 17.60.110(C). The Director of Planning must also make specific findings regarding the proposed height in relation to the freeway elevation, the number and spacing of signs in the area, and the sign's height, design, and location in relation to its proposed use. *Id.* Finally, the Old Ordinance required all signs to be "compatible with the style or character of existing improvements upon lots adjacent to the site," including incorporating specific visual elements such as type of construction materials, color, or other design detail. *Id.* § 17.60.200.

**[9]** We hold that these restrictions sufficiently cabined the Director of Planning's discretion by providing "adequate standards to guide the official's decision." The prohibition on off-

site signs requires only that the Director of Planning determine whether the proposed sign's content is related to its site. The definition of "off-site" is sufficiently clear to guide this discretion, particularly when coupled with the additional restrictions governing freeway-facing signs. In any case, the off-site/on-site distinction is well-canvassed in our prior case law. *See Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 613 (9th Cir. 1993) (judicial precedent constitutes "narrow, objective, and definite standards" cabining official discretion). The Director's discretion is not unlimited, but cabined by specific findings regarding the relationship of the sign to the site, the freeway, and other signs in the area. The compatibility requirement delineates fairly specific criteria regarding the relationship between the sign and the site. *See G.K. Ltd. Travel,* 436 F.3d at 1083.[7] Although the design review criteria are "somewhat elastic and require reasonable discretion to be exercised by the permitting authority, this alone does not make the Sign Code an unconstitutional prior restraint." *Id.* at 1084; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) ("While these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.").

## 2. *First Amendment: Regulation of Commercial Speech*

**[10]** Outdoor Media claims that the Old Ordinance impermissibly regulated commercial speech without stating a substantial governmental interest, and that the regulations were not narrowly tailored to those interests. Beaumont cited

---

[7]The Planning Director's discretion was further cabined by provisions explicitly permitting administrative and judicial review of his decision. *See* Old Ordinance §§ 17.60.020(H), 17.60.300(D)(6); *see also Get Outdoors II v. City of San Diego*, ___ F.3d ___ (9th Cir. 2007) (emphasizing appeals process as limit on officials' discretion); *Southworth v. Bd. of Regents of Univ. of Wisconsin Sys.*, 307 F.3d 566, 588 (7th Cir. 2002) (same).

among its legislative purposes a desire to preserve the city's aesthetics from "overhead clutter" and to "preclude potential traffic and safety hazards through good signing." Old Ordinance § 17.60.005. As a regulation of *commercial* speech, both the Supreme Court and our circuit have endorsed these rationales as substantial governmental interests. *See Metromedia*, 453 U.S. at 508-09; *Ackerley Commc'ns*, 108 F.3d at 1097-1100.[8] Moreover, a complete ban on off-site commercial billboards does not reach further than necessary to achieve that goal. *Metromedia*, 453 U.S. at 508; *Outdoor Media Sys.*, 997 F.2d at 610-11. We therefore conclude that the Old Ordinance's regulation of billboards was not an unconstitutional regulation of commercial speech and affirm the dismissal of this claim.

### 3.  First Amendment: Regulation of Noncommercial Speech

[11] Although *Metromedia* allows a city to completely ban off-site commercial billboards, it does not necessarily follow that the city may treat noncommercial speech in a like fashion. "The fact that the city may value commercial messages relating to on-site goods and services more than it values commercial communications relating to off-site goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others." *Metromedia*, 453 U.S. at 513. Applying this holding, we have explained that "an ordinance is invalid if it imposes greater restrictions on

---

[8]Outdoor Media's complaint faults the city for failing to conduct studies showing that off-site signs have an adverse effect upon the city's aesthetics or safety. In the context of regulating commercial speech, our case law does not require any such analysis. *See Ackerley*, 108 F.3d at 1099-1100 ("As a matter of law Seattle's ordinance, enacted to further the city's interest in aesthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation will in fact advance the city's interests."); *see also Metromedia*, 453 U.S. at 509-10 (deferring to legislative judgments that billboards are traffic hazards and a ban promotes the city's aesthetic interests).

noncommercial than on commercial billboards or regulates noncommercial billboards based on their content." *Nat'l Advertising Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir. 1988) (citing *Metromedia*, 453 U.S. at 513, 516).[9]

**[12]** Here, the Old Ordinance's off-site ban prohibits signs that "advertise[ ] or inform[ ] in any manner businesses, services, goods, persons, or events at some location other than that upon which the sign is located." Old Ordinance § 17.60.010. This broad prohibition seems to reach beyond off-site commercial copy to preclude the posting of many noncommercial messages, if those messages are not related to the site upon which the sign is located. *See Desert Outdoor Adv., Inc. v. City of Moreno Valley*, 103 F.3d 814, 820 (9th Cir. 1996). For example, a business owner may erect a sign advertising a sale at his store, but may not erect an identical sign that instead informs of an event at his local church. As noted above, the New Ordinance solves this problem by explicitly limiting the off-site ban to commercial copy and including a message substitution clause that allows noncommercial copy to replace legal commercial copy. But the Old Ordinance lacks these safeguards. The City may have intended the old off-site ban to reach only commercial speech, but the ordinance's broad language goes further. "Insofar as the city tolerates billboards at all . . . it may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial mes-

---

[9]Contrary to the dissent, we find that content may well have played a role in the denial of the permits. The City's Director of Planning recommended that the permits be denied because the signs "would result in excessive, undue and adverse visual intrusion . . . *by adding unrelated advertising* to a future new commercial facility" (emphasis added). Because the term "advertising" is ambiguous and may include both commercial and noncommercial messages, Outdoor Media has standing to challenge the code as imposing too high a burden on noncommercial speech.

sages." *Metromedia*, 453 U.S. at 513, *see also Desert Outdoor Adv.*, 103 F.3d at 820.

**[13]** We also note that the Old Ordinance may also have impermissibly regulated noncommercial speech on the basis of content, by exempting certain noncommercial off-site signs from the permit requirement. For example, political signs relating to candidates or issues may be erected without a permit, subject to certain time and size restrictions. Old Ordinance § 17.60.025(A)(15). Certain directional and informational signs are also exempt. *Id.* § 17.60.025(A)(11). "Because the exemptions require City officials to examine the content of noncommercial . . . signs to determine whether the exemption applies, the City's regulation of noncommercial speech is content-based." *Desert Outdoor Adv.,* 103 F.3d at 820. Such restrictions are unconstitutional "unless the City establishes that the ordinance is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* (quoting *Nat'l Adv. Co.*, 861 F.3d at 249).

**[14]** This case is before us on a motion to dismiss. The record is therefore not yet developed regarding the constitutionality of these restrictions. In addition, we reiterate that only Outdoor Media's damages claims survive the repeal of the Old Ordinance, and "we cannot say whether this facial infirmity should enable [the plaintiff] to recover damages, as the record is inadequate at present to determine whether this infirmity was the cause of [the plaintiff's] harm." *Coral Const. Co. v. King County*, 941 F.2d 910, 927 (9th Cir. 1991). At this juncture, it is enough to recognize that Outdoor Media has sufficiently stated a claim that the Old Ordinance is facially unconstitutional and has alleged damages stemming from application of that ordinance. We therefore reverse the dismissal of this claim.

### 4.  First Amendment: Overbreadth

**[15]** Outdoor Media also claims, without explanation, that the Old Ordinance is overbroad. We affirm dismissal of this

claim because the plaintiff is limited to damages, which are unavailable for an overbreadth challenge. An overbreadth claim is essentially a claim that a statute may be constitutional as applied to the plaintiff but sweeps so broad as to unconstitutionally suppress the speech of others not before the court. *See Taxpayers for Vincent*, 466 U.S. at 798. This theory presupposes that the ordinance is constitutional as applied to the plaintiff. "On an overbreadth challenge [plaintiff] would also be barred from collecting § 1983 damages which are available only for violations of a party's own constitutional rights." *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006).

### 5. *Equal Protection Clause*

[16] Finally, Outdoor Media claims that the Old Ordinance violates the Equal Protection clause. Because billboard operators are not a protected class, the city's distinction between off-site and on-site advertisers is sustained if rationally related to a legitimate government interest. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277-78 (9th Cir. 2004). *Metromedia* found this distinction met the more stringent *Central Hudson* test, because "offsite advertising, with its periodically changing content, presents a more acute problem than does on-site advertising." *Metromedia*, 453 U.S. at 511 (plurality opinion); *see also Clear Channel*, 340 F.3d at 813-14, 816. This rationale also satisfies the lower hurdle of rational basis review. *See generally Railway Express Agency v. New York*, 336 U.S. 106, 109 (1949). We therefore affirm the dismissal of this claim as well.

### IV.    Conclusion

We affirm the district court's dismissal of Outdoor Media's claims for injunctive and declaratory relief as moot in light of the revocation of the challenged ordinance. In addition, we affirm the dismissal of the company's procedural due process claim because the company lacks vested rights in a permit

application. We hold the district court erred in dismissing Outdoor Media's First Amendment and Equal Protection claims under the vested rights doctrine. After reviewing the noticed ordinance, however, we conclude that none of these allegations states a claim under our case law, with the exception of the claim that the Old Ordinance improperly regulated noncommercial speech. We therefore reverse the dismissal of this claim only, and remand for further deliberation in light of this opinion. Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part and REMANDED.

---

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I, II, III.A, and III.B of the majority opinion. I also concur in Parts III.C.1, III.C.2, and III.C.4, but I dissent from Part III.C.3 because I conclude that Outdoor Media does not have standing to raise a facial challenge to the regulation of noncommercial speech.

Article III standing requires (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). Outdoor Media cannot establish that it was injured by Beaumont's former treatment of noncommercial speech. *See Get Outdoors II, LLC, v. City of San Diego*, ___ F.3d ___, ___ (9th Cir. 2007) ("Get Outdoors II cannot leverage its injuries under certain, specific provisions to state an injury under the sign ordinance generally.").

Outdoor Media's conditional use permit application was denied based on Beaumont's concerns for visual blight and unrelated advertising in close proximity to an anticipated new commercial development. Beaumont's decision was not based

on the content of messages that Outdoor Media would have posted had its conditional use permits been granted, nor could it. Outdoor Media erects its billboard structure on leased property, and then leases its billboard advertising space to the public. Its application for the conditional use permits did not contain the content of any messages. Indeed, message content was unknown when Outdoor Media applied for the permits because it was yet to be determined by Outdoor Media's future lessees.

In sum, Outdoor Media cannot establish that it was injured by the provision of Beaumont's former ordinance regulating noncommercial speech. Accordingly, I would affirm the district court's dismissal of Outdoor Media's complaint in it entirety.