**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GET OUTDOORS II, LLC, A Nevada
Limited Liability Company, dba
GET OUTDOORS, LLC, in
California,

          *Plaintiff-Appellant,*

        v.

CITY OF SAN DIEGO, CALIFORNIA,

          *Defendants-Appellees.*

No. 05-56366

D.C. No.
CV-03-01436-WQH

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
June 6, 2007—Pasadena, California

Filed November 1, 2007

Before: Cynthia Holcomb Hall and Consuelo M. Callahan,
Circuit Judges, and Lyle E. Strom,* Senior District Judge.

Opinion by Judge Hall

---

*The Honorable Lyle E. Strom, Senior United States District Judge for
the District of Nebraska, sitting by designation.

**COUNSEL**

E. Adam Webb, The Webb Law Group, Atlanta, Georgia, for the appellant.

Randal R. Morrison, Sabine and Morrison, San Diego, California, for the appellee.

**OPINION**

HALL, Senior Circuit Judge:

This appeal is the first of three unrelated but similar cases requiring us to decide whether and to what extent an outdoor advertising company has standing to challenge the constitutionality of a municipal sign ordinance. In this opinion, we will outline the general legal principles applicable to all three cases and decide the appeal in the challenge to the San Diego ordinance.[1] We affirm the district court's order granting summary judgment to the City of San Diego.

## I. Background

Get Outdoors II is an outdoor advertising company attempting to build and operate signs in the City of San Diego ("the City"). On June 2, 2003, Get Outdoors II filed twenty-four applications for billboard permits with the City, through its Development Services Department. Get Outdoors II alleges that it had already signed leases with various real property owners to post signs on their parcels.

When the company's representative dropped off the applications, a city official informed him that the City's sign ordi-

---

[1] We decide the other two cases in separately published memorandum dispositions. *See Get Outdoors II, LLC v. City of Lemon Grove*, ____ ; *Get Outdoors v. City of Chula Vista*, ____ .

nance prohibited new billboards but agreed to review the applications. The City then performed a complete review of the applications and notified Get Outdoors II the next day that it could not grant permits for any of the signs under San Diego Municipal Code ("SDMC") § 142.1210, which prohibits new signs bearing "off-premises" messages.[2] The City sent a formal letter, dated June 9, to the same effect.[3] In a later declaration, a city development official explained that, in addition to violating the billboard ban, each of the permit applications was missing key documents and that, in any case, the proposed billboards violated size and height restrictions. Each of the proposed billboards had a display square footage of 672 and a pole height of 50 feet in areas where display was limited to 50, 150 or 350 square feet and pole height limited to 20 or 30 feet.

Get Outdoors II filed this lawsuit on July 21, 2003. Its 33-page, 105-paragraph second amended complaint raises fourteen claims for relief based on the First and Fourteenth Amendments. It argues that the City's billboard regulations are unconstitutionally overbroad under the First and Fourteenth Amendments because they favor commercial over non-commercial speech and some types of noncommercial speech

---

[2]The "off-premises" or "off-site" distinction is a familiar one in sign regulation. The City in this case has restricted its sign permits to "on-premises" messages, which are defined as "those identifying or advertising an establishment, person, activity, goods, products, or services located on the premises where the sign is installed." SDMC § 142.1210(a)(1)(A). "Off-premises" or "off-site" signs, by contrast, advertise products or services that are sold or provided elsewhere. *See generally Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981).

The City exempts non-conforming signs that were lawfully erected before July 19, 1983. *See* SDMC § 127.0303.

[3]The declarations offered by the City and Get Outdoors II differ as to the dates — some say the relevant events occurred on June 2 and 3, others on June 5 and 6. Both parties agree that the City contacted Get Outdoors II the day after the permits were submitted and sent the formal letter on June 9.

over others, and that its own rights were violated by the ban on off-site signs, as well as certain size and height restrictions. It also argued that the permitting process was an invalid prior restraint because it lacked a deadline provision and because it gave city officials unbridled discretion to grant or deny permits. Get Outdoors II requested injunctive relief, damages, and attorney fees. Notably, it requested that the court invalidate the entire sign ordinance.

The parties filed cross-motions for summary judgment, which were argued in November 2004. By that time, the City had enacted several legislative amendments, including a "message substitution" clause, a 45-day deadline for decisions on all permit applications, and a judicial review provision. *See* SDMC §§ 142.1210(a)(10) (D); 129.0808; 129.0809. The district court granted summary judgment to the City on July 13, 2005. *See Get Outdoors II v. City of San Diego*, 381 F. Supp. 2d 1250 (S.D. Cal. 2005).

The district court held that Get Outdoors II lacked standing to bring its overbreadth claim because it was challenging provisions of the ordinance other than the provision that applied to it, found the billboard ban constitutional, rejected the challenge to the permit procedure as moot, and rejected the unbridled discretion claim on the merits. The court also held that the challenged provisions were severable because the content-neutral size and height restrictions may function independently from the provisions regulating sign copy and location. It granted summary judgment to the City.

Get Outdoors II filed its timely appeal on August 17, 2005. We review the district court's dismissal for lack of standing, dismissal for mootness, and grant of summary judgment de novo. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 (9th Cir. 1998); *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996). We may affirm on any ground supported by the record. *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004). We hold that the

City's billboard size and height restrictions do not violate the First Amendment, that Get Outdoors II's permit applications violated these restrictions, and that it therefore lacks standing to challenge the ban on off-premises messages. Because we also hold that the challenge to the permit process fails, we affirm.

## II.   Standing

We turn first to the question of whether Get Outdoors II has standing to challenge the entire sign ordinance on the basis of the injuries it has alleged here. Because Get Outdoors II has made what it calls an overbreadth claim, it argues that it falls into a special exceptional category of standing doctrine. Throughout its briefs, Get Outdoors II uses "overbreadth" to describe two different arguments: (1) a severability argument that an injury caused by one provision of the sign ordinance should be considered an injury caused by the *entire* sign ordinance; and (2) a traditional overbreadth claim that certain provisions of the sign code are unconstitutionally overbroad because they threaten to burden the speech of non-parties to this case. The discussion that follows addresses both of these arguments.

### A.   *Lujan* and Overbreadth Standing

[1] The "irreducible minimum" of standing under Article III of the Constitution is 1) an injury in fact which is "actual, concrete, and particularized"; 2) a causal connection between that injury and the defendant's conduct; and 3) a likelihood that the injury can be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The federal courts have supplemented this requirement of "constitutional standing" with the doctrine of "prudential standing," which requires us to ask whether the plaintiff's claim is sufficiently individualized to ensure effective judicial review. *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *Sec'y of State v. Joseph H.*

*Munson Co.*, 467 U.S. 947, 956 (1984)*; Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208 (1974). We employ the prudential standing doctrine to avoid usurping the legislature's role as the policymaking body in our separation of powers. *See Prime Media v. City of Brentwood*, 485 F.3d 343, 353 (6th Cir. 2007) (hereinafter "*Prime Media II*").

When a plaintiff states an overbreadth claim under the First Amendment, however, we suspend the prudential standing doctrine because of the special nature of the risk to expressive rights. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). While the prudential standing doctrine typically prevents us from hearing lawsuits on the basis of injuries to non-parties, the overbreadth doctrine operates as a narrow exception permitting the lawsuit to proceed on the basis of "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612. In other words, a plaintiff challenging a law as overbroad argues that the law is constitutionally valid as applied to him, but unconstitutional as to others. *See, e.g., Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988); *New York v. Ferber*, 458 U.S. 747 (1982).

**[2]** Even when raising an overbreadth claim, however, we ask whether the plaintiff has suffered an injury in fact and can satisfactorily frame the issues on behalf of these non-parties. *See Munson*, 467 U.S. at 958; *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 554 (9th Cir. 2003). Without this bare minimum of standing, the overbreadth exception would nullify the notion of standing generally in First Amendment litigation. We therefore agree with a string of recent decisions in other circuits holding that the three *Lujan* elements still apply in the overbreadth context. *See CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269-72 (11th Cir. 2006); *accord Prime Media II*, 485 F.3d at 349-50; *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d

1299, 1305 (11th Cir. 2007); *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006); *see generally Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

In this case, Get Outdoors II challenges the off-site ban, as well as the rest of the sign code, on the basis of the harm it causes to other potential speakers, specifically noncommercial speakers. Get Outdoors II must still show, however, that it meets the *Lujan* requirements for each of the provisions it wishes to challenge as overbroad.

## B.    Get Outdoors II's Standing

Having established that Get Outdoors II must meet all three *Lujan* requirements for any claim it wishes to make, we turn to deciding where and to what extent Get Outdoors II has standing. The injuries alleged in this case are as follows: (1) the denial of the permits; (2) being subjected to an unconstitutional content-based ban, and (3) being subjected to an unconstitutional prior restraint. Therefore, we must determine which provisions caused these injuries and whether these injuries are redressable by a favorable decision from this court.

The permits were denied explicitly under the City's ban on off-site signs. This was the provision cited in person, in the informal telephone call, and the formal letter. The City has also demonstrated in its affidavits that it would have independently denied the permits under its size and height restrictions. Because we have found causation where the plaintiff has shown a provision would certainly be used against it, *see Klein v. San Diego County*, 463 F.3d 1029, 1033 & n.3 (9th Cir. 2006), we hold for our purposes here that the size and height restrictions constitute a secondary cause of the denial of the permits. *Cf. North Avenue Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 443-44 (7th Cir. 1996) (reading complaint broadly to incorporate a challenge to provision that did not

directly cause, but otherwise would have caused, the plaintiff's permits to be denied). Get Outdoors II would have us take an even broader view of its case, however. It argues that its injuries should be attributed to the entire sign code and that it has standing, accordingly, to challenge these other provisions.[4]

**[3]** Get Outdoors II has standing to challenge only those provisions that applied to it. In *4805 Convoy v. City of San Diego*, 183 F.3d 1108 (9th Cir. 1999), for example, the City revoked a nude dancing license from the plaintiff, who proceeded to challenge the procedures for granting, as well as revoking, the licenses. We held that the plaintiff had standing to challenge only the revocation procedures. *Id.* at 1111. Get Outdoors II cannot leverage its injuries under certain, specific provisions to state an injury under the sign ordinance generally. *See also Covenant Media of South Carolina, LLC v. City of North Charleston*, 2007 WL 1953381 at * 6 (4th Cir. July 6, 2007) (holding that billboard company's standing to challenge the permit procedure "does not provide it with a passport to explore the constitutionality of every provision of the Sign Regulation").

Having determined the nature of the alleged injuries and their specific causes, we now ask whether these injuries are redressable. The blueprint for the district court's holding on this issue was *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge,* 9 F.3d 1290 (7th Cir. 1993), where a billboard company had challenged the village's off-site ban after seeking permits for signs that violated size and height rules. As the Seventh Circuit explained, in dismissing for lack of standing, "[a]n injunction against the portions of the sign and zoning

---

[4]We need not reach the question of severability of the provisions contained in the City's sign ordinance because it is clear that only the specific provisions discussed here injured Get Outdoors II. Severability would become relevant, however, were Get Outdoors II to prevail on its claims for injunctive relief, and we were to decide how much, if any, of the sign code to invalidate.

codes that [Harp] has challenged [i.e., the off-site sign ban] would not let it erect the proposed sign; the village could block the sign simply by enforcing another, valid ordinance [i.e., the size and height restrictions] already on the books." *Id.* at 1292. The court reiterated that redressability is part of the notion that any concrete harm occurred. *Id.*

The Seventh Circuit has since limited *Harp* in a case where the court determined that the plaintiff was implicitly challenging these secondary restrictions as well. *See North Avenue*, 88 F.3d at 443-44. Similarly, Get Outdoors II urges us to find that its claims are redressable because it has also explicitly challenged the size and height restrictions. For this reason, its appeal here is unlike *Harp*, and unlike two otherwise similar cases in other circuits where the billboard company lacked standing due to a violation of a provision not challenged in the case at bar. *See KH Outdoor*, 482 F.3d at 1303-04; *Advantage Media*, 456 F.3d at 801.

[4] We find that Get Outdoors II's injuries under the substantive provisions of the City's sign regulations would be redressed by a decision from this court that invalidated both the size and height restrictions as well as the off-site ban. We note, however, that because standing is addressed on a claim by claim basis, an unfavorable decision on the merits of one claim may well defeat standing on another claim if it defeats the plaintiff's ability to seek redress. *Cf. Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 821 (6th Cir. 2005) (hereinafter "*Prime Media I*") (denying one claim on the merits and remanding to the district court to make a new determination of standing on the other claims).

### III.   The Size and Height Restrictions

[5] Size and height restrictions on billboards are evaluated as content-neutral time, place and manner regulations.[5] *See*

---

[5]We construe the challenge to the size and height restrictions as an argument based on the effect on noncommercial speech because Get Outdoors

*County of Riverside*, 337 F.3d at 1114-15 (9th Cir. 2003); *Prime Media I,* 398 F.3d at 818. A content-neutral time, place, and manner restriction must be narrowly tailored to serve a significant government interest, and must leave open ample alternative channels of communication. *Flint v. Dennison*, 488 F.3d 816, 830 (9th Cir. 2007). Specifically, the regulations must not be "substantially broader than necessary to protect the city's interests. *See Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808 (1984)

The Supreme Court has recognized that a city's interests in traffic safety and aesthetics are sufficient government interests for the purposes of this analysis. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981). The City has stated that the purpose of its sign code is "to optimize communication and quality of signs while protecting the public and the aesthetic character of the City." SDMC § 142.1201. That is all our review requires to prove a significant interest. *See Ackerley v. Krochalis*, 108 F.3d 1095, 1099-1100 (9th Cir. 1997).

[6] To further these interests, the City has calibrated its size and height restrictions for "ground signs," which include billboards, to the width of the adjacent public rights-of-way and the speed limit. *See* Table 142-12H, SDMC §142.1240. Display square footage, for example, varies from 32 square feet for the narrowest rights-of-way with the lowest speed limits, to 300 square feet for freeway-oriented signs. *See* Table 142-12H, § 142.1240. We find that these size and height restric-

---

II used the noncommercial speech standard in structuring its complaint. A challenge based on the effect on commercial speech would be evaluated under the less stringent test taken from *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980) (requiring that laws affecting commercial speech seek to implement a substantial governmental interest, directly advance that interest, and reach no further than necessary to accomplish the given objective.)

tions are not substantially broader than necessary to protect the city's interests in traffic safety and aesthetics, and directly advance the city's interests. *See Taxpayers for Vincent*, 466 U.S. at 808 & n.27; *see also Prime Media I*, 398 F.3d at 822 (declining to require government to justify how it calculated size and height restrictions). Further, because these restrictions leave open alternative channels of communication — indeed they stop short of banning all billboards — we hold that they do not foreclose any alternative avenues of communication. *See Metromedia*, 543 U.S. at 501.

**[7]** We therefore uphold San Diego's size and height restrictions on billboards as valid, content-neutral, time, place and manner restrictions.

## IV.   The Off-Site Sign Ban

**[8]** We determined in Part II, *supra*, that our ability to grant relief in this case hinged on the possibility that we would invalidate both the off-site sign ban *and* the size and height restrictions. We have now decided this latter set of restrictions is constitutional, and validly prohibits the construction of the proposed billboards. Therefore, even a decision enjoining the off-site ban would not redress the injury Get Outdoors II suffered due to the denial of its permits. *See Covenant Media*, 2007 WL 1953381 at * 6; *Prime Media*, 485 F.3d at 349-50; *KH Outdoor*, 482 F.3d at 1305; *Advantage Media*, 456 F.3d at 799; *Harp*, 9 F.3d at 1292. Nor would nominal damages be appropriate under these circumstances. *See County of Riverside*, 337 F.3d at 1115.

Accordingly, we do not reach Get Outdoors II's claim regarding the off-site ban.

## V.   Prior Restraint

A person subject to a licensing ordinance may make a facial, First Amendment attack on that ordinance without ever

applying for a permit because the threat of the prior restraint itself constitutes an actual injury. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 759 (1988). The Supreme Court has espoused two definitions of a prior restraint: an ordinance that vests unbridled discretion in the licensor, *see id.; Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), or an ordinance that does not impose adequate time limits on the relevant public officials, *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). Get Outdoors II alleges that the sign ordinance in this case is invalid for both reasons, but we must first evaluate its standing to bring this part of its challenge.

As we previously discussed, no claim is exempt from Article III standing requirements of injury in fact, causation and redressability. Prior restraint claims are unique, however, because the *threat* of the prior restraint itself constitutes the injury-in-fact. Thus, a party who is subject to "a licensing statute allegedly vest[ing] unbridled discretion in a government official over whether to permit or deny expressive activity" may challenge the statute without subjecting itself to the application process. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755-56 (1988). In other words, "[o]ne who might have had a license for the asking" may challenge the licensing scheme as a prior restraint. *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).

**[9]** Get Outdoors II challenges the discretionary provisions contained in the City's sign ordinance and the absence of a time-limit provision. However, Get Outdoors II's applications to erect billboard structures were denied on grounds that are constitutionally valid, and neither its filings nor its actions in this case have evinced any intent to file permit applications that comply with these requirements. Thus, Get Outdoors II cannot show that it would *ever* be genuinely threatened by an unconstitutional prior restraint in this case. In other words, Get Outdoors II is not a plaintiff who "might have had a license for the asking." No change in the permit procedure

would result in the approval of the permits it requests. *See KH Outdoor*, 482 F.3d at 1304-05 (dismissing all claims for lack of redressability). Further, because its permits were independently invalid, we cannot say there it suffered any injury compensable by even nominal damages. *See County of Riverside*, 337 F.3d at 1115. We therefore hold that Get Outdoors II lacks standing to challenge the permitting process.[6]

In summary, we have found that Get Outdoors II's claims fail on the basis of standing, mootness and the merits. Accordingly, the district court's order granting summary judgment is

AFFIRMED.

---

[6]The district court correctly acknowledged the absence of injury in fact for the procedural safeguards provision, noting that "the lack of injury in fact undermines Plaintiff's standing to bring this overbreadth claim." *Get Outdoors II, LLC v. City of San Diego*, 381 F.Supp. 2d 1250, 1269 (S.D. Cal. 2005) (citing *4805 Convoy, Inc.*, 183 F.3d at 1112). It resolved this claim based on mootness "assuming, arguendo that Plaintiff has standing to assert its claim[.]" *Id.* at 1270. We agree that this mootness determination is an alternate basis for affirming summary judgment regarding the challenge to the lack of procedural safeguards.